[No. 5735.]

THE DENVER AND RIO GRANDE RAILROAD COMPANY V. MOSS.

1. **Constitutional Law—Legislative Powers—Regular Session**—In regular session the general assembly is at liberty to act upon any question within legislative authority, in any manner not in conflict with the state or federal constitution. The power to determine the subject-matter of its action, in regular session, is with the general assembly itself.—(284)

2. ——**Special Session**—While the executive, in convening the legislature in special session, has no power to direct what legislation shall be enacted, he has, under the constitution, the sole authority to designate the particular subject-matter to which legislation shall be directed. If this duty is not performed by the executive, and if the proclamation calling the special session fails to name any particular subject-matter to which the legislature is to direct its attention, it can enact no law at all.—(284, 285)

And it is not sufficient for the governor to name a certain class of artificial persons, concerning which laws may be enacted, leaving the legislature free to legislate in regard to them, at

will. This is to devolve upon the legislature a duty and authority which the constitution reposes in the governor alone.

A proclamation convening the general assembly in special session, naming as the purpose for which it is to assemble, "To enact any and all legislation relating to, or in any wise affecting, corporations, both foreign and domestic, of a quasi-public nature," is too broad and indefinite to comply with the intent of the constitution (art. IV, sec. 9), because it leaves to the legislature itself, the choice of the subject-matter or matters upon which legislation shall be undertaken.—(286, 287)

The act of March 14, 1902 (Laws 1902, c. 1; Rev. Stats., secs. 5480-5496), is void. Hill and White, J. J., dissent.—(283-287)

*Appeal from Ouray District Court*—Hon. THERON STEVENS, Judge.

Messrs. WOLCOTT, VAILE & WATERMAN, Mr. E. M. CLARK, Mr. J. G. McMURRAY, Mr. A. R. KING, Messrs. HENRY & SIGFRID, and Mr. W. W. FIELD for appellant.

Messrs. STORY & STORY for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The action is for the killing of live stock. It is based solely upon an absolute liability imposed by the act of March 14, 1902, commonly denominated "The Railroad Fencing Statute," passed at a special session of the legislature. Plaintiff had judgment below, and the defendant, the railroad company, brings the case here on appeal to review that action.

The only question which will be considered and determined is the constitutionality of the act, as that finally disposes of the cause of action. The defendant insists that the act is not within the proclamation of the governor, and therefore void. The only section of the governor's proclamation under which this act can possibly fall is paragraph 3, which reads as follows:

"Third. To enact any and all legislation relating to or in any wise affecting corporations, both foreign and domestic, of a *quasi*-public nature."

That portion of article IV, section 9, of the state constitution involved, reads:

"The governor may, on extraordinary occasions, convene the general assembly, by proclamation, stating therein the purposes for which it is to assemble; but at such special session, no business shall be transacted other than that specially named in the proclamation."

There is nothing in the preamble to the proclamation, or in a subsequent explanatory message, which throws light upon the matter under consideration. So there is, for determination, the bald question, whether, under paragraph 3 of the proclamation, it was competent for the legislature to pass the act, under the provisions of which this suit was commenced, and recovery had.

It is first to be observed that, in regular session, the general assembly has the widest latitude, and is at liberty to act upon any question whatsoever, in any manner not in conflict with the state or federal constitutions, concerning which it has authority to legislate. It is equally true that, by the express terms of the constitution, the general assembly, in special session, can do no business whatever, except upon a subject specially named in the proclamation of the governor. In regular session, the power to determine the subject-matter of legislation is with the general assembly exclusively. By the constitution, it is made the duty of the chief executive to determine and specially name in his proclamation what, in special session, the subject-matter of legislation shall be. It is true that, when the governor has specially named the subject-matter, the form, scope and character of legislation is wholly within

the discretion of the general assembly. The governor has no power to direct what the legislation shall be, but he has sole authority, and by the constitution it is made his duty, to specially name what the subject-matter shall be. Unless the governor, in his proclamation, specially names some particular subject-matter of legislation, the general assembly, at a special session, is without power to pass any law.

The duty having been placed on the governor to specially name the legislation in which the general assembly shall engage when called together in special session, that duty can only be discharged by him. It may not be left to the general assembly to choose for itself the subject-matter upon which, at such sessions, it will legislate. What special subject-matter of legislation was named by the governor when he said, "To enact any and all legislation relating to or in any wise affecting corporations, both foreign and domestic, of a *quasi*-public nature"? None whatever, absolutely none. On the contrary, he simply pointed out a certain class of artificial persons, concerning which there might be legislation, and left the general assembly a free rein to legislate in reference to them at will. In other words, he specifically pointed out the persons, the class, the interests to be affected, but not the special business or subject-matter of legislation. He left the legislature to determine this for itself, when, by a direct and positive constitutional provision, that particular function was and is for him to discharge, and for him alone.

It is argued by counsel that the proclamation is broad enough to admit the particular legislation in question. That is all too true. The fundamental defect of the proclamation is that it is too broad, and not specifically confined. It permits of any and

every kind of legislation, concerning foreign and domestic corporations of a *quasi*-public nature, in which the members of the general assembly may care to engage. It leaves the legislature to determine for itself what the subject-matter or matters of legislation shall be, while, by the direct mandate of the constitution, the governor, and none other, is specifically required to determine that very thing. The vice in paragraph 3 of the proclamation is, that it is not narrowed to the naming of some particular subject-matter of legislation. No subject of special legislation having been named, under this provision of the proclamation, no legislation whatever was competent. This constitutional provision contemplates that there shall first exist in the executive's mind a definite conception of a public emergency, which demands an extraordinary session, and then he may convene the general assembly for action upon that particular subject-matter, to be specially named. If it be competent for the governor, after the general manner attempted, to authorize the general assembly to select for itself the subject-matter of legislation and enact laws accordingly, then it is equally permissible for him, in his proclamation, to say that the general assembly is called in special session ''To enact any and all legislation relating to or in any wise affecting the qualified voters of the state, or the taxpayers of the state, or the citizens of the state,'' and thus the door is opened wide for general legislation at a special session. The sole difference between these suggestions and the designation which the governor actually did make, is one of degree; there is absolutely none in character or kind. If the governor may empower the legislature, in the face of the constitution, to enact any and all legislation by merely pointing out the person, class or interest to be affected thereby, instead of specially naming

the subject-matter of legislation, then the constitutional provision is utterly disregarded, and its main and most wholesome and salutary purpose, that of confining legislation to the specific subject-matter concerning which an emergency is believed to exist, completely nullified.

If this provision of the constitution has a meaning, it must mean what it says, and if it does, the governor failing, in the paragraph of his proclamation under discussion, to specially name any subject-matter of legislation, the enactment thereunder of the so-called "Railroad Fencing Statute" was unauthorized, and is, therefore, without warrant of law and void. This seems so plain that neither argument nor illustration can make it plainer.

We have been unable to find another case, in this or any other state, where the governor has failed in his proclamation to specially name the subject-matter upon which he felt the emergencies of the case required legislation. The attempt to name the business to be transacted, by pointing out the persons or interests to be affected by the proposed legislation, is a plain evasion of a positive constitutional mandate, which the courts should not approve. Such course is out of harmony with all precedents that have been called to our attention. *In re Governor's Proclamation,* 19 Colo. 333, the court sets forth that, "By paragraph 20 of the proclamation, the governor, among other things, states the purpose of convening the legislature to be the amendment of the attachment laws of the state." The "attachment laws" was the subject of legislation, and not a word was said about the parties to be affected by it. The fact is, it is wholly immaterial whom the enactment may affect. In *People v. Johnson,* 23 Colo. 150, it is shown that the governor's proclamation called for an amendment of the Australian ballot law. In *Par-*

*sons v. The People,* 32 Colo. 221, the act whose con-
stitutionality was questioned was passed in pursu-
ance of the governor's proclamation, which called
for legislation "To provide the necessary revenue
to pay the expenses of the state government and of
state institutions for the fiscal years ending Novem-
vember 30, 1901 and 1902, and to enact a revenue
law for the state providing for the assessment of
property for taxation and the levy and collection of
taxes." In *State v. Shores,* 31 W. Va. 491, cited by
appellee, the proclamation called for legislation "To
protect the public against unnecessary expenditures
by regulating the costs, charges and proceedings in
criminal cases before justices of the peace and cir-
cuit courts." In *Baldwin v. State,* 21 Tex. Ct. App.
591, the subject-matter of legislation was there also
specifically pointed out, namely, taxation, and the
legislature was free to pass laws at will upon that
subject. In *C. B. & Q. Ry. Co. v. Wolfe,* 61 Neb.
502, upon which the appellee mainly relies to have
this act upheld, the subject there named was "The
revision or amendment of the general incorporation
law." This case has no application whatever to the
case at bar. It is not only not parallel, it is not even
analogous. There the subject of legislation was, in
fact, particularly pointed out and named. More-
over, the kindred constitutional Nebraska provision
is essentially different from our own, in that it does
not provide that the governor shall, by his procla-
mation, specially name the business to be trans-
acted. Article II, sec. 12, of the constitution of that
state, upon this subject reads: "But the legisla-
ture may, on extraordinary occasions, be convened
by proclamation of the governor, and when so con-
vened shall transact no business except such as re-
lates to the object for which they were so convened,
to be stated in the proclamation of the governor."

The object for which the legislature was convened in Nebraska was, under the third provision of the proclamation, "The revision or amendment of the general incorporation law." Here is a clear object stated for which the legislature was convened, and the general assembly was at liberty to pass any legislation whatsoever which amended or revised the general incorporation law of that state? In view of the wording of the constitutional provision of Nebraska, under consideration there, and of the fact that the object of legislation was specifically pointed out in the call, that decision does not in the slightest militate against this holding, or conflict with the views here announced.

*In re Governor's Proclamation, supra,* having reference to the purpose of the constitutional provision here under consideration, this court, speaking through Mr. Justice Elliott, among other things, had this to say:

"The questions submitted require the consideration and construction of section 9 of article IV of the constitution. In the light of other constitutional provisions it is not difficult to determine the object of this section. The framers of the constitution, apprehending evil from frequent legislative sessions, and from too much legislation, provided for biennial sessions, and limited such sessions to a short period of time. It was then considered that changes in the laws of the state oftener than once in two years were not desirable, and that a reasonable time was necessary for our people to become acquainted with new statutes and test their value before attempting to change them. It is undoubtedly true that if legislative sessions were more frequent the statutes enacted by one legislature would hardly be published before a succeeding legislature would begin to change, modify or repeal them. * * * As a pro-

tection against any sudden or unexpected emergency requiring action by the legislature, our constitution provides that a special session may be convened by proclamation of the governor. It is expressly provided, however, that such special session shall not be convened for general purposes, but that the business to be transacted at such session shall be limited to matters named in the executive proclamation. * * * The governor is required to state in his proclamation the purpose for which the legislature is to assemble in special session; and it is provided that at such session no business shall be transacted other than that *specially named* in the proclamation. The governor is thus invested with extraordinary powers; he alone is to determine when there is an extraordinary occasion for convening the legislature; and he alone is to designate the business which the legislature is to transact when thus convened. * * * The legislature cannot go beyond the limits of the business *specially named* in the proclamation; nor can it legislate upon business not named in the proclamation."

Speaking to a constitutional provision similar to the one now under consideration, the supreme court of Tennessee, in *Mitchell v. Turnpike Company,* 22 Tenn. 456, said:

"This is undoubtedly a very salutary provision, tending somewhat to check over-legislation, and to render laws a little more stable, by furnishing a period of two years, during which they may be in some degree subjected to the test of a brief experiment."

In the case of *Jones v. Theall,* 3 Nev. 233, commenting upon the purposes of a constitutional provision there, substantially like our own, being section 9 of article V of the Nevada state constitution, reading as follows:

"The governor may, on extraordinary occa-

sions, convene the legislature by proclamation, and shall state to both houses, when organized, the purpose for which they have been convened, and the legislature shall transact no legislative business except that for which they were specially convened, or such other legislative business as the governor may call to the attention of the legislature while in session.''

The supreme court of that state said:

''There is certainly no ambiguity in this language; unless we adopt the saying of Talleyrand—that words are given to conceal ideas—there can be no difficulty in ascertaining the object sought to be accomplished by this section of the constitution. The powers of the legislature at its special sessions are expressly and clearly limited to the transaction of the business for which it may be convened, or such other business as the executive may call to its attention whilst it is in session. If the legislature can break through this limit for one purpose, it may for all purposes, and enter upon general legislation.''

In the case of *Wells v. Missouri Pacific Ry. Co.*, reported in 110 Mo., page 286, in determining the constitutionality of an act passed at a special session, where it was contended that the legislation was not within the proclamation, in construing constitutional provisions relating to the matter here under consideration, and reading as follows:

''On extraordinary occasions he may convene the general assembly by proclamation, wherein he shall state specifically each matter concerning which the action of that body is deemed necessary.

''The general assembly shall have no power, when convened in extra session by the governor, to act upon subjects other than those specially designated in the proclamation by which the session is

called, or recommended by special message to its consideration by the governor after it shall have been convened.''

The supreme court there had this to say:

''We conclude that the 'act' does not fall within range of the subjects submitted to the assembly for action by the governor in his proclamation and messages.

''Is it, therefore, to be pronounced void? That depends on the legal energy to be ascribed to those parts of the constitution first above quoted. In them, as in some other portions of that document, the people have seen fit, for satisfactory reasons, to place limitations upon the full use of legislative power. They have commanded, in the most solemn manner, an observance of certain forms in the process of legislation, because (we may assume) they were led by experience to believe those forms conducive to better results than had been otherwise attained.

''It is not for us to question the reasons of that policy or to construe the life out of their deliberate act. When they have said, as in the language before us, that 'the general assembly shall have no power in extra session to act upon subjects other than those specially designated,' etc., it is our duty to give effect to that statement. To hold that such language is merely directory would amount, in substance, to amending the instrument so as to import that the assembly should have no such power unless it assumed that power. Such a reading, we conceive, would reduce the command to a dead letter and virtually eliminate it. It is a reading we do not feel at liberty to adopt, however great the respect we entertain for the legislature.

''The power of construing the constitution must necessarily be lodged in some department of govern-

ment to insure that practical sanction of its mandates which is essential to preserve their vitality and force. This delicate and sacred trust is devolved upon the judiciary as a manifestation of the political principle that ours is a government of laws rather than of men. In exercising that power the courts should take a large and comprehensive view of constitutional language, mindful that 'every scripture is to be interpreted by the same spirit which gave it forth,' and with a deep desire to enforce its full and exact meaning. Thus viewing the very definite provision before us we cannot regard it otherwise than as mandatory.

"When the people have declared a certain form indispensable to the proper expression of their will, it is no part of our function to adjudge that form unnecessary or immaterial. On the contrary, our bounden duty is to enforce that declaration.

"It follows that the 'act' in question cannot be sustained as a constitutional exertion of the law-making power."

Note with what cogency of reasoning and lucidity of statement the court of final resort in Missouri states its conclusions on this subject. If expressly written for that purpose, the situation before us could not have been more accurately or appropriately portrayed. Those views, so aptly expressed, may well be adopted as our own.

The judgment is reversed and cause remanded, with instructions to the court below to dismiss it.

Decision *en banc*.    *Reversed and remanded.*

Mr. JUSTICE HILL and Mr. JUSTICE WHITE dissent.

———

Mr. JUSTICE HILL, dissenting:

I cannot agree with the conclusion reached by the majority in holding that the act in question is

not within the proclamation of the governor, and, therefore, void. In considering this question it appears to me that the well-acknowledged elementary rules (recognized by all the authorities), that no enactment of the general assembly will be pronounced unconstitutional, unless very clearly so, and that every fair and reasonable intendment should be made to sustain it; that full force and effect should be given to the controlling presumption that acts of the legislature are within the limitations of the constitution unless the contrary clearly appears, have been overlooked. This is unquestionably the law, and in case of doubt the doubt is to be resolved in favor of the constitutionality of the law. It is the duty of the court to uphold, rather than tear down, legislation, if it can be done without doing violence to any well-defined rules of constitutional or statutory construction.—*People v. Henderson,* 12 Colo. 369; *People v. Richmond,* 16 Colo. 274; *In re Leasing of State Lands,* 18 Colo. 359; *Railway Co. v. Riblet,* 66 Pa. St. 164.

In this respect there is no distinction between acts passed at general or special sessions of the legislature, the requirement that no business shall be transacted other than that specially named in the proclamation is merely an additional restriction placed by the constitution upon the power of the general assembly to enact legislation. The construction to be given to this particular restriction, however, must, of necessity, be the same as that given to any of the other numerous restrictions placed by the constitution upon the power of the legislature; and, in determining the extent of the legislation which may be enacted at a special session, the proclamation must be given the broadest possible construction consistent with the meaning of the lan-

guage used.—*State v. Shores* (W. Vir.), 7 S. E. 413; *Baldwin v. State,* 21 Texas App. 591.

In my opinion this court is in error when it fails to consider, but assumes, as it states, that "There is nothing in the preamble to the proclamation, or in a subsequent explanatory message, which throws light upon the matter under consideration." In this connection, I desire to state, further, that counsel for the appellant are in error in their statement that "it does not appear that this proclamation was accompanied by any * * * subsequent explanatory message from the governor to the legislature upon this subject."

While published in the Session Laws, the proclamation can also be found at pages 5 to 8 of the House Journal, Extra Session, 1902; when we turn to pages 14 to 23 of the same Journal we find a subsequent explanatory message from the governor to the legislature delivered at the time it was convened. This message contains considerable history and a long series of grievances which the governor evidently felt the state had a right to complain of, and against the actions, and, by him alleged, bad faith pertaining thereto, by and of a large number of corporations, both foreign and domestic, of a *quasi*-public nature. For the purpose of ascertaining whether the legislative power has been properly set in motion within the limitation of the constitution, it is agreed by counsel on both sides that judicial notice will be taken of such official proclamations and messages as have been issued in the exercise of the constitutional authority of the executive. From the reading of his excellency's message, considered in connection with paragraph 3 of the proclamation, only one conclusion can be reached; that is, that, in the mind of the governor, a condition of affairs had arisen in this state upon account of

which it was necessary that the legislature take cog-
nizance of such facts and pass such laws relating to
and affecting corporations, both foreign and domes-
tic, of a *quasi*-public nature, as in their opinion
would relieve the existing conditions, as set forth in
his special message to them; hence, when these facts
are taken into consideration, so far as the language
of paragraph 3 is concerned, it is apparent that it
was intended to mean just what it said, viz., to give
the legislature the right and privilege to enact any
and all legislation relating to or in any wise affect-
ing corporations, both foreign and domestic, of a
*quasi*-public nature, and that, so far as this para-
graph was concerned, the purposes for which it was
to assemble, was to enact any and all legislation as
in the opinion of the general assembly was neces-
sary, relating to or in any wise affecting such corpo-
rations; but the majority opinion holds, as counsel
for the appellant have urged, that paragraph 3 in
the governor's call is meaningless because no sub-
ject is named; hence, no legislation could have been
enacted thereunder. And counsel further urge that
it was not the intention of the governor that any
such should be, for the reason that he did not spe-
cially name any particular subject upon which he
desired such legislation pertaining to this class of
corporations. Referring to this section of the con-
stitution, they say: "In this provision it is appa-
rent that the word 'specially' is the dominant word
of the entire provision," hence they contend, if this
paragraph of the governor's proclamation be segre-
gated from the remainder of it and weighed sepa-
rately, it is hardly possible to conceive of anything
more general in its nature, as he attempts therein to
give them a *carte blanche* to enact any laws relating
to or affecting such corporations, which, in their

judgment or caprice, they may see fit to adopt; and this they claim makes it meaningless and a nullity.

They further urge that as the governor, in this paragraph, did not point out in what respect the legislation in regard to this class of corporations is necessary or urgent, he did not specially name the particular matter upon which immediate legislation is needed, and for these reasons this paragraph did not and could not, in itself, authorize action of any kind by the legislature at a special session. In this connection the opinion overlooks: First, the elementary rule in the construction of all writings, viz., that full force and effect shall be given to each and every paragraph thereof, if it can be done. That this paragraph is not inconsistent with the other provisions of the call is apparent upon its face. Second, the opinion overlooks another elementary principle, viz., that it is not to be presumed that any portion of any writing was intended to be a nullity, but the presumption is, to the contrary, that all the words therein were intended to have a meaning.

I agree with the majority opinion, wherein it states:

"This constitutional provision contemplates that there shall first exist in the executive's mind a definite conception of a public emergency, which demands an extraordinary session, and then he may convene the general assembly for action upon that particular subject-matter, to be specially named."

This is unquestionably correct, but, on the other hand, no one can read this proclamation and the governor's subsequent explanatory message, and then say from the language used that there did not exist in the executive's mind a definite conception of a public emergency, which demanded an extraordinary session, one of the objects of which was legislation to control *quasi*-public corporations, which

was stated in the preamble in as emphatic language as could be used, as follows:

"Whereas, the welfare and future prosperity of the people of the state of Colorado demand that legislation be enacted to control *quasi*-public corporations."

It will be noted that this section of the constitution does not limit the number of subjects which shall be legislated upon; that is entirely within the discretion of the governor; nor does it provide that each shall be stated separately or separately specially stated; hence the sole question for determination is whether or not the act is germane to any purpose specially mentioned in the proclamation. When we take into consideration that the things to be affected, to wit, all corporations of a *quasi*-public nature are themselves the creatures of statutes, and that their very existence, rights and privileges are dependent upon existing laws; if, under these conditions, the words, "To enact any and all legislation relating to or in any wise affecting corporations," etc., do not present a subject-matter for legislation, then, in my opinion, the text-books, even for the lower grades of our public schools, have been written in vain.

In entering upon a discussion of this question two general principles should be kept in mind: First, that the power to designate the subjects of legislation rests solely with the governor, and in determining constitutional questions the courts are not concerned with the necessity or non-necessity of the legislation; second, the authority of the governor to designate the business to be transacted at the special session extends only to an enumeration of general subjects of legislation, as stated by this court *In re Governor's Proclamation*, 19 Colo. 333:

"The governor having specially named the

amendment of attachment laws as part of the business to be transacted at the special session, his authority by proclamation in respect to that matter was exhausted.''

Also, in *The People ex rel. v. Johnson*, 23 Colo. 150, this court said:

''The governor, by specially designating in the proclamation convening the general assembly as one of the subjects of legislation the law in relation to elections, etc., in this state, known as the 'Australian Ballot Law,' for amendment, must be held to have submitted the whole subject-matter of such act for legislative action thereon.''

The direct question here involved is one of first impression to this court, and decisions of other states pertaining to the subject appear to be quite limited; but where similar questions have been under consideration, I am unable to appreciate wherein any of them have held that no special subject-matter of legislation was named, or that in so doing it was simply pointing out a certain class of artificial persons concerning which there might be legislation.

Section 12 of article II of the constitution of Nebraska, upon this subject, reads as follows:

''But the legislature may, on extraordinary occasions, be convened by proclamation of the governor, and when so convened shall transact no business except such as relates to the object for which they were so convened, to be stated in the proclamation of the governor.''

The governor of Nebraska convened the legislature in extraordinary session; among the objects specified in his call was No. 3, as follows: ''3. The revision or amendment of the general incorporation law.'' Pursuant to this paragraph, the legislature of that state passed an independent act, complete within itself, entitled, ''An act to define the duties

and liabilities of railroad companies.'' Its consti-
tutionality was challenged in the case of *C., B. & Q.
R. R. Co. v. Wolfe,* 61 Nebr. 502, which was a per-
sonal injury case. That court sustained the validity
of the act, and held that at the time of the issuance
of the proclamation the general incorporation laws
of the state comprised chapter 25, Revised Statutes,
etc., and included in its scope regulations for the in-
corporation, control and government of a large num-
ber of corporations, including railroad companies.
The law governing the latter being sections 72-122,
inclusive, of that chapter, referring to which that
court said:

''This portion of the general incorporation laws
of the state includes many provisions regulating the
formation, government and control of railroad cor-
porations, defines their rights and duties, and is as
much a part of the general incorporation laws of the
state as any other portion of the chapter. There is
no doubt that the act of 1867 had an effect to amend
the general incorporation laws of the state, and for
that reason was germane to point 3 of the call above
quoted. Being an act complete in itself, it was not
necessary that it refer to any particular portion of
the laws to be amended.''

In referring to the legislation that could be en-
acted under this paragraph of the call, the court
said:

''A wide scope for legislation relative to corpo-
rations is given by section 3 of the call, for it author-
izes the revision or amendment of the general in-
corporation laws of the state, of which those re-
lating to railroad companies are a part.''

The Nebraska act makes railroad companies lia-
ble for damages inflicted upon the person of passen-
gers while being transported, etc., except where the
injury arises from the criminal negligence of the

person injured, or except when the injury complained of shall be the violation of some express rule or regulation of the road actually brought to his or her own notice. It was urged that this portion of the act was clearly unauthorized by the call, in reply to which the court said:

"It is also contended that the act is not authorized by the call, for the reason that it destroys the defense of contributory negligence, except in case the injured party is criminally negligent, and that there is nothing in the call which would authorize the legislature to deliberate upon or pass an act with that object in view. We take it that the governor has not the power to limit the legislature to some specific subject of general legislation, but that, when he points out to the legislature the general scope of legislation, as he did in both sections 3 and 21 of the call, he has exhausted his powers, and that the legislative branch may then proceed to legislate upon any subject relating to such general head. (Cases cited.) The legislation in question is clearly regulative of corporations formed under the general incorporation laws of the state, and, therefore, within the range of the powers conferred upon the legislature by the executive proclamation."

To the same effect is the proclamation here; the language used is broad and in itself may include a great number of acts (yet limited to those affecting such corporations only), but when we take into consideration the explanatory statement of the governor upon this subject in his preamble, also that portion of his message upon the question of *quasi*-public corporations, it is difficult to perceive how he could have more specifically covered the entire subject in such few short words, intending thereby to cover, as they do, any and all laws "relating to or in any wise affecting corporations, both foreign and

domestic, of a *quasi*-public nature." And I am unable to appreciate wherein the difference or distinction is to be found in a call which provides for the revision or amendment of the general incorporation laws, and one which calls for laws affecting such corporations. The Nebraska law did not purport to amend the incorporation laws of that state, but was an act complete within itself, upon that subject, but the court, in sustaining its validity, held, while this was true, yet it was in reality, in substance, though not in form, an amendment to the corporation laws of that state, in which case they declined, and I think correctly so, to sacrifice substance to form. Neither can I agree with the statement that the constitutional provision in Nebraska is essentially different from our own; when its language is considered, the substance of both will be found to be practically the same. The first portion of ours reads: "The Governor may, on extraordinary occasions, convene the General Assembly by proclamation, stating therein the purposes for which it is to assemble." The second portion of the Nebraska section reads: "And when so convened shall transact no business except such as relates to the object for which they were so convened, to be stated in the proclamation." The exception in that portion of the Nebraska act quoted is contained in the latter portion of ours, which reads: "But at such special session no business shall be transacted other than that specially named in the proclamation." Hence, when these two portions of ours are construed together, we find the governor shall state the purposes for which it was convened, and those purposes are the business which shall be transacted, and none other, so that the only real difference between this section of ours and that of Nebraska, when the language of each is transposed, is the difference between the words, "the ob-

ject for which they were so convened," and the words, "the purposes for which it is to assemble." The difference in the two proclamations under consideration are that one states, "the revision or amendment of the general incorporation law," and the other states, "to enact any and all legislation relating to or in any wise affecting corporations," both of which accomplish the same result.

The case of *Wells v. The Mo. Pac. Ry. Co.*, 110 Mo. 286, instead of being against the position which I contend for, it assumed, for the purposes of that case, the correctness of the position which I maintain should be adopted here, yet leaves it undetermined, as shown by the language used upon that subject, to be found at page 293, wherein that court said: "It will be assumed (though this appeal does not require us to decide), that the subjects thus identified were 'specifically designated,' within the meaning of the constitution."

In the Missouri case, the question involved was whether the mandatory provisions in the constitution referred to in the governor's call embraced therein any authority for the enactment of the law in question. In other words, the governor's proclamation stated the matter for action at the extra session thus: "To provide the legislative enactments necessary or expedient to enforce and execute those laws and principles with reference to railways and railroad companies, which the people themselves have enacted and declared in their constitution." The act passed was, "to provide for the prevention of accidents to railroad employees and others by requiring that switches, frogs and guardrails be properly blocked." This was the substance of the first section. The second and last declares, in substance, that in suits for damages growing out of non-compliance with the first section, contributory negli-

gence of the injured party shall not relieve defendant from liability.

The section of the constitution under which authority for the passage of the act is claimed reads as follows:

"Railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies, common carriers. The general assembly shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and shall, from time to time, pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce all such laws by adequate penalties."

Referring to which that court said:

"The words, 'to correct abuses,' as here employed, evidently refer to abuses having some relation to the freight or passenger tariffs of railroads as public highways and common carriers. The context indicates that.

"No reasonable interpretation of the language of that section would suggest any constitutional command for legislation of the kind now under review.

"This 'act,' it will be observed, imposes a duty to block 'all switches, frogs,' etc., not only upon railway companies, but upon all kinds of corporations, 'or other persons,' owning any part of a railroad. It would reach the case of every private citizen, owning a small track for his own convenience, as well as the great railroad lines of Missouri. It is a stringent exercise of police power.

"The effect of the second section is to introduce a radical innovation in procedure by the at-

tempted elimination of contributory negligence as a defense, by way of penalty for violation of the 'act' in cases to which it might apply. But it has no fair relevancy, that we can discover, to the subject of freight or passenger tariffs, or to abuses of corporate power by railways in the respects alluded to in section 14, article XII, of the constitution.

"We conclude that the 'act' does not fall within range of the subjects submitted to the assembly for action by the governor in his proclamation and messages."

Thus, when we accept the court's ruling as to the construction of section 14 of article XII of their constitution, to the effect that a law which requires railroad companies to properly block their switches, frogs and guardrails in order to protect persons from injury, is foreign to the mandate in the constitution calling for legislation to enact laws to correct abuses of, and to prevent unjust discrimination and extortion in freight and passenger rates, etc. It will be seen that the legislation attempted did not come within the scope of the proclamation, and, hence, that court's ruling is not in conflict with the position I think should be taken here, but the real question under consideration here was there assumed to be in harmony with my position here.

In the case of *Jones v. Theall,* 3 Nev. 233, cited by counsel, the court held that the legislature, under a clause of the constitution similar to ours, has no power, at a special session, to legislate upon any subject except those to which their attention has been called by the governor, with a view to legislative action thereon, in which case there was no contention made that the proposed law came within the call. This ruling is nothing more than the language of their constitution, the same as ours; it throws no light upon the question under consideration.

In *Davidson v. Moorman,* 2 Heiskell (Tenn.) 575, the court held that an act of the legislature, passed at a special session,. which provided that certain persons shall have a certain time within which to redeem real estate sold under judicial process, was not within the range of a proclamation of the governor, by which it was called to meet, to legislate upon the military and political interest of the state. . This case is not similar to the question before us, for the reason that the act in question does come within the purview of section 3 of the governor's call, if that section means what it says.

To summarize, as I view it, in addition to ignoring the elementary rules of construction, the substance of the opinion here is to say that, although this court has heretofore repeatedly held that the authority of the governor in such proclamations extends only to an enumeration of general subjects of legislation, and while in this particular instance, in harmony with these former decisions, the governor has attempted to, and has complied with this requirement, yet for that very reason this court will now say that the language used is too broad, in that it does not state the particular special subject-matter for legislation pertaining to this class of corporations, and I vouchsafe to say (if I may be permitted to do so) that whenever the question again comes before a governor for consideration, if he accepts the language as it reads, he will be confronted with this conflict, in our opinions, wherein it is stated in those of the past that it is wrong if you do, and in this one that it is wrong if you don't.

I am authorized to state that Mr. JUSTICE WHITE concurs in the views herein expressed.

. Decided March 6, 1911; rehearing denied May 1, 1911.