Reese, J.
delivered the opinion of the court.
This is a common law action of trespass on the case brought by the plaintiff against the defendant to recover damages for an injury to the inheritance, by digging up the soil, rock, &c., and cutting down trees, &c., in the construction, by the defendant, of the turnpike road. By the act of incorporation a mode of proceeding before the county court, and the appointment of a jury ad quod damnum, is designated with a view to the ascertainment and assessment of damages, arising from the location and construction of the road. Under the act of incorporation, passed in 1835, the route for the road from Franklin to Columbia was designated and fixed by eight persons named in the act of incorporation for that purpose.
This designated route did not run upon or touch the farm of plaintiff. In 1836, at a called session of the Legislature, ch. 4, sec. 2, it was provided, that “the commissioners of any rail road, or turnpike road, might make a survey or resurvey as far as to locate routes or make such changes as they might deem to the interest of said companies.”
By authority of this provision, the commissioners relocated the road, so as to make the same run over the farm of the plaintiff. Five of the commissioners approved and signed a report, making the changes in question; two did not sign, because not concurring in the report, and one of the commissioners who acted on a former occasion was dead. Under the circumstances stated the court charged the jury ih effect, that the act of incorporation having designated a proceeding by application to the *460 county court, the plaintiii could not bring his common law action for any other than unnecessary damages. In this charge, we are of opinion that the circuit court was perfectly correct*' This act of incorporation was a public act, establishing the road in question for the use and benefit of the public, and pointing out the mode of proceeding, and designating the tribunal, by means of which private individuals, over whose lands the road might pass, should obtain redress for injury sustained. Indeed it is scarcely here contended for the plaintiff, that the terms of the statute, and the legal authorities applicable to the case, do not fully vindicate and sustain the charge of the court in this respect. The judgment of the court below is sought to be reversed, mainly upon other grounds. It is said that the act of 1836, ch. 4, sec. 2, so jfar as it authorizes resurveys and changes of location or route in rail roads and turnpike roads is unconstitutional.
The alledged unconstitutionality of this provision is not supposed to arise from the character of the provision itself, or the nature of the subject, for the constitution, article 11, sec. 9, declares that “a well regulated system of internal improvement is calculated to develope the resources of the State, and promote the happiness and prosjaerity of her citizens, therefore it ought to be encouraged by the General Assembly.” But it is supposed to arise from the limited powers of the Legislature at a called session, their commission at such time to legislate, so to speak, depending upon the scope and extent of the Govern- or’s message, to be laid before them. Article 3, sec. 9 of the constitution provides that the Governor, “may on extraordinary occasions, convene the General Assembly by proclamation, and shall state to them when assembled the purposes for which they shall have been convened, but they shall enter on no legislative business, except that for which they were especially called together.” This undoubtedly is a very salutary provision, tending'somewhat to check over-legislation, and to render laws a little more stable, by furnishing a period of two years, during' which they may be in some degree subjected to the test of a brief experiment. And cases may sometimes arise, it is to be sincerely hoped but seldom, in which it may become the duty *461 bf tlie court, to declare a law passed under such circumstances, beyond the scope of the legislative commission arising out of this provision of the constitution. Our present enquiry is, whether this be one of such cases. The message of Newton Cannon, Governor of the State at the time in question, calls the attention of the legislature to the survey of a route through the State for the contemplated Louisville, Cincinnati and Charleston rail road, to the omission of a county in a late electoral law, to the disputed boundary with the State of Mississippi, to the treaty with the Cherokee nation, to compensation of volunteer militia called into service under the requisition of the President of the U. States, and finally to the act of Congress, entitled “An act to regulate the deposites of the public money,” a copy of which was transmitted to them, and with respect to which the Governor remarked, that it presented another subject demanding-legislative action during that session,- and he adds, that the reception and judicious investment of such sum or sums of money, as may from time to time be appropriated to our State under the provisions of the said act, must be regarded by all as a matter of paramount importance, and that he had the “fullest confidence that they would devote to it, the most mature consideration.”
He adds, with regard to the act of Congress, and the fund arising from it to the State of Tennessee, that “its happy influence in stimulating us to increased and vigorous exertions in the prosecution of our system of education and internal improvement, must be extensively beneficial to the whole community.” At that time by the pre-existing laws the State was interested to the extent of one third in all the turnpike companies, and we cannot say that the resurvey or change in the location of the. routes of such public improvements would not constitute a step, and a very material step, to the judicious investment of the fund alluded to.
We cannot say in view of the message, that it was not competent for the legislature, “to enter upon the business” thus submitted to their consideration, or that the provision in question, is so remotely connected with that matter Or “business” as not properly to spring out of the general subject.
*462 The Governor or executive, with us, is in no degree, or in any sense, a part of the legislature, and has not, even at a called session the initiation of bills. At such session, when he submits a general subject, and the legislature “enter upon the business,” of legislating upon it, it will be found a difficult and invidious task to secure the character and details of their provisions, so as to determine them of too remote affinity with the message from which they arise. In this case it is not necessary. It is said in the 3d place, that only five ’of the commissioners acted, and that it is necessary that all should act, although a majority concurring can determine a location. Be the first part of this proposition as it may, in point of law, it does not appear to us, as a matter of fact, that all did not act; we think the evidence tends to show the contrary. Upon the whole, we affirm the judgment.