## IN RE GOVERNOR'S PROCLAMATION.

BUSINESS OF SPECIAL LEGISLATIVE SESSION.

The business to be transacted at a special session of the legislature is to be specially named in the executive proclamation, but is not to be particularly prescribed in all its details. The legislature cannot go beyond the limits of the business specially named; but within such limits it may act freely, in whole or in part, or not at all, as it may deem expedient.

Quære, whether causes of attachment may be repealed so as to apply to existing contracts.

### Original Proceeding.

THE opinion of the court is in response to certain questions propounded by the house of representatives as hereinafter stated.

The governor of Colorado by proclamation convened the Ninth General Assembly in special session on January 10, 1894. The proclamation is based upon the following provision of the constitution :

### ARTICLE IV.

"Sec. 9. The governor may, on extraordinary occasions, convene the general assembly, by proclamation, stating therein the purpose for which it is to assemble ; but at such special session no business shall be transacted other than that specially named in the proclamation. He may by proclamation, convene the senate in extraordinary session for the transaction of executive business."

The proclamation, among other matters of business to be transacted at the special session, stated the following :

"20. To amend the attachment laws of the state by striking out the *tenth, eleventh* and *thirteenth* causes of attachment, such amendment to take effect only on contracts made after this enactment becomes a law."

At the special session thus called, there was introduced

House Bill, No. 15, entitled, "A Bill for an Act to Amend the Attachment Laws of the State as prescribed by General Section 2000 of the General Statutes of the State of Colorado." The bill if passed would be a substantial re-enactment of section 77 of the Justices' Attachment Act, omitting the seventh, eighth and tenth causes of attachment.

The questions propounded are as follows:

"*First.* Can the legislature legally enact the amendment contemplated by this bill under the constitutional provision and the governor's call as set forth?

"*Second.* Can the legislature legally enact this amendment so as to apply to contracts made prior to its passage?"

The questions presented were discussed by Mr. J. F. CARNAHAN, Mr. ROBERT W. BONYNGE and Mr. J. A. KILTON, *amici curiæ.*

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The questions submitted require the consideration and construction of section 9 of article 4 of the Constitution. In the light of other constitutional provisions it is not difficult to determine the object of this section. The framers of the constitution, apprehending evil from frequent legislative sessions and from too much legislation, provided for biennial sessions, and limited such sessions to a short period of time. It was then considered that changes in the laws of the state oftener than once in two years were not desirable, and that a reasonable time was necessary for our people to become acquainted with new statutes and test their value before attempting to change them. It is undoubtedly true that if legislative sessions were more frequent the statutes enacted by one legislature would hardly be published before a succeeding legislature would begin to change, modify or repeal them.

Speaking upon a constitutional provision similar to the one now under consideration, the supreme court of Tennessee

said: " This undoubtedly is a very salutory provision, tending somewhat to check over legislation, and to render laws a little more stable, by furnishing a period of two years, during which they may be in some degree subjected to the test of a brief experiment." *Mitchell v. Turnpike Co.*, 22 Tenn. 460. These views were expressed more than fifty years ago. It is safe to say that the various state legislatures did not, in those days, manufacture one quarter the number of statutes at a single session that they do now.

As a protection against any sudden or unexpected emergency requiring action by the legislature, our constitution provides that a special session may be convened by proclamation of the governor. It is expressly provided, however, that such special session shall not be convened for general purposes, but that the business to be transacted at such session shall be limited to matters named in the executive proclamation.

From the reading of section 9 its meaning seems plain; it consists of ordinary language; its terms are not unlike those of other state constitutions upon the same subject; but the proclamation under consideration is somewhat extraordinary for its minuteness of detail. Hence the task of construing and applying the constitutional provision to the terms of the proclamation is attended with some difficulty.

If we construe the language of section 9 with the view to sustain the largest measure of executive control over legislative power, we reach a certain conclusion; if we construe the language with the view to protect legislative power against undue executive control, we reach a conclusion quite different.

In a free representative government like ours—a government of distributed and balanced powers—the equality of the different departments of the government, and the supremacy of each department in its appropriate sphere, are cardinal principles, and must be maintained except in those instances where the constitution expressly authorizes a departure from them. Thus, a conservative construction of

section 9 is required; in this matter, truth lies between the extremes, and the middle of the road is the path of safety.

The governor is required to state in his proclamation the purpose for which the legislature is to assemble in special session; and it is provided, that at such session no business shall be transacted other than that *specially named* in the proclamation. The governor is thus invested with extraordinary powers; he alone is to determine when there is an extraordinary occasion for convening the legislature; and he alone is to designate the business which the legislature is to transact when thus convened. Thus far, there can be no question as to the meaning of section 9. But must we go further, and hold that the governor may *prescribe* the particular way and manner in which the business he has designated shall be transacted in all its details? If the session be called for legislative purposes, may the governor draft the bills, append them to his proclamation, and require the legislature to pass them as prepared by himself, or not legislate at all? In a certain contingency the general assembly may be convened in special session for the purpose of electing a United States senator. Will it be contended that the person to be elected may be *specially named* in the proclamation, and that no other person than the one thus named can be elected at such special session? It is manifest that such a construction would be to destroy legislative independence and convert members of the two houses into mere instruments to register and ratify the executive will—that is, to do the bidding of the governor, or not act at all.

It is true, section 9 requires that the business to be transacted at the special session shall be *specially named;* but it does not require that such business shall be definitely and particularly *prescribed* in all its details by executive proclamation. Legislative judgment and discretion as to the transaction of the business *specially named* are certainly not inhibited at special sessions. The legislature cannot go beyond the limits of the business *specially named* in the proclamation; nor can it legislate upon business not named in the

proclamation ; but within the limits of such business it may
act freely, in whole or in part, or not at all, as may be deemed
expedient according to its own judgment. The legislature
must do this much, or the right of legislating by the repre-
sentatives of a free people at a special session is destroyed,
and all our ideas of such right are rendered obsolete. *Bald-
win v. The State*, 21 Tex. Ct. of Apps. 593 ; *Jones v. Theall*,
3 Nev. 233 ; *City of St. Louis v. Withaus*, 16 Mo. App. 247,
affirmed by supreme court, 90 Mo. 646 ; *State v. Shores*, 7
S. E. Rep. (W. Va.) 413 ; *Wells v. Mo. Pac. Ry. Co.*, 19 S.
W. Rep. (Mo.) 530.

Let us apply the foregoing principles to the matters sub-
mitted. By paragraph 20 of the proclamation the governor,
among other things, states the purpose of convening the leg-
islature to be the amendment of the attachment laws of the
state, designating the tenth, eleventh and thirteenth causes
of attachment. It is probable that in designating these
causes of attachment the governor referred to the causes
thus numbered in section 92 of the Code. The code, how-
ever, is applicable only to courts of record ; but it appears
that the seventh, eighth and tenth grounds of attachment,
as specified in section 77 of the justices' act, correspond sub-
stantially to the tenth, eleventh and thirteenth causes of attach-
ment stated in the code. It would be a narrow construction,
therefore, to hold that the legislature may amend the laws ap-
plicable to certain causes of attachment in courts of record,
but that, like causes of attachment in justices' courts, can-
not be amended under the proclamation. The subject-matter
of legislation includes in substance the justices' act as well
as the act governing courts of record, and the necessity or
desirability of such amendatory legislation is certainly as
great in the one case as in the other.

The proclamation further provides that the amendment of
the attachment laws shall take effect only as to contracts
made after such amendment shall become a law. This pro-
vision must be held to be an unwarranted restriction upon
legislative power and discretion. The governor having *spe-*

*cially named* the amendment of the attachment laws as part of the *business* to be *transacted* at the special session, his authority by proclamation in respect to that matter was exhausted. Whatever he has further said upon that subject must be considered as merely advisory. The manner in which, and the extent to which, the causes of attachment, or any of them, shall be amended, if at all, are matters for the legislature to determine in the first instance according to its own judgment.

House Bill No. 15 as presented for our consideration is not confined to future contracts. Nevertheless, we are of the opinion that it may be legally passed in that form notwithstanding the restriction attempted by the proclamation. Whether the act would be obnoxious to those constitutional provisions forbidding the passage of any law impairing the obligation of contracts, is a different question. If the bill should pass in the form now presented, such question might arise in some litigated case, and it would then be determined by the courts in the regular course of judicial proceedings. In the determination of such question the courts would not be controlled by the executive proclamation; nor, as a rule, will this court undertake to decide such questions in response to executive or legislative questions. No valid reason has been suggested why the bill may not be constitutionally enacted in the form now presented, even though it should become necessary by judicial decision to restrict its operation to future contracts. As to this point we deem it inexpedient to express an opinion. *In re District Attorneys*, 12 Colo. 466; *In re Priority of Legislative Appropriations*, ante, 58; *Carlile v. Henderson*, 17 Colo. 532.

This opinion has been rendered in obedience to constitutional requirements which we cannot evade, though we are reluctant to express our views in advance upon executive or legislative business.