THE PEOPLE EX REL. McGAFFEY ET AL. v. THE DISTRICT
   COURT OF ARAPAHOE COUNTY, FRANK T. JOHNSON,
   JUDGE, ET AL.

1. LEGISLATIVE POWER—EXTRA SESSION—GOVERNOR'S CALL.
The call for the special session of the general assembly of 1894 stated,
   among other purposes for which it was to convene, the following:
   "To enact that the law in relation to elections, etc., in this state,
   known as the 'Australian Ballot Law,' be amended so as to pro-
   vide," designating in detail the amendments proposed by the exec-
   utive. *Held*, that such specific instructions can be regarded as
   advisory only, and not as limiting the character of legislation that
   might be had upon the general subject of the Australian ballot
   law.

2. ELECTIONS—JURISDICTION.
Each of the two contending factions of a political party claimed the
   party emblem; the secretary of state assumed jurisdiction and
   decided the dispute; the defeated party applied to the district court
   for relief, challenging the authority of the secretary to determine
   the controversy, as well as the correctness of his decision upon the
   merits. *Held*, that the district court had jurisdiction to entertain
   the cause and determine the matter, under the statute as amended
   in 1894.

3. STATUTORY CONSTRUCTION.
A remedial statute is to be liberally construed.

*Original Application for Writ of Prohibition.*

THIS action grows out of a contest between two factions,
each claiming the right to file nominations of and for the
people's party, and to use the emblem of that party, to wit,
the device known as the "cottage home." Each party claims
that it constitutes the only genuine "people's party," one
convention having met in the city of Denver, on Septem-
ber 7, 1896, and the other in the city of Pueblo two days
later. The contest originally arose before the secretary of
state, who decided in favor of the list of nominees nominated
at Denver, and that the ticket so nominated was entitled to
use the "cottage home" emblem.

From the secretary of state the matter was carried into

the district court of Arapahoe county. That court, upon a final hearing, decided in favor of the ticket nominated at Pueblo, and against the ticket nominated in Denver, and directed the secretary of state to certify only the former of the two tickets upon the official ballots, giving to such ticket the emblem and name of the "people's party." The unsuccessful party now applies to this court for a writ of prohibition to restrain the district court from carrying into effect its judgment.

Mr. ALEX. STEWART and Mr. GEO. W. TAYLOR, for relators.

Messrs. PATTERSON, RICHARDSON & HAWKINS and Mr. W. J. THOMAS, for respondents.

PER CURIAM. The jurisdiction of the district court to entertain the proceeding instituted before it is alone challenged in this proceeding. The merits of the controversy between the two contending factions of the populist party are, therefore, in no manner before this court. If the district court had jurisdiction, its judgment is conclusive upon the parties until set aside or modified upon review by appeal or writ of error. Such a review is not here sought.

The jurisdiction of the district court is, however, attacked upon two grounds:

1. The act relied upon to support the jurisdiction, having been passed at the special 1894 session of the legislature, it is claimed it is void and of no force or effect, because not embraced within the call by the governor for such special session.

2. The second claim is that the act, if constitutional, confers upon the courts named therein jurisdiction to hear and determine only such matters as the secretary might have determined in the first instance, to wit, matters of form, and not such a controversy as was raised by the pleadings, and was, in fact, determined by the judgment of the district court.

In support of the first ground, section 9 of article IV. of the state constitution is relied upon. It reads:

" SEC. 9. The governor may, on extraordinary occasions, convene the general assembly by proclamation, stating therein the purpose for which it is to assemble ; but at such special session no business shall be transacted other than that specifically named in the proclamation." * * *

The call for the special session of the legislature, in 1894, issued in pursuance of the foregoing constitutional provision, contained, among other subjects submitted for legislation, the following:

" 29. To enact that the law in relation to elections, etc., in this state, known as the ' Australian Ballot Law,' be amended so as to provide : "

This is followed by paragraphs designating in detail the amendments which the executive desired the legislature to make. The governor, by specially designating in the proclamation convening the general assembly as one of the subjects of legislation the law in relation to elections, etc., in this state, known as the " Australian Ballot Law," for amendment, must be held to have submitted the whole subject-matter of such act for legislative action thereon. He had no more authority to go farther than this, and specify the particular character of the amendments that were to be voted upon, than he would have had to have prepared the bills, and attached them to his call, and directed the legislature to have passed or rejected the same without amendment. Such specific instructions can, at best, be regarded as advisory only, and not as limiting the character of legislation that might be had upon the general subject of the Australian ballot law. *In re Governor's Proclamation*, 19 Colo. 333.

The second objection urged to the jurisdiction of the district court calls for a determination of the force and effect of the amendment to the Australian ballot law made at the special session. In order that we may pass intelligently upon this amendment, it will be necessary to consider the state of the law prior thereto, and the defects, if any, which the legis-

lature had in mind at the time of making the change. What is known as the " Australian Ballot Law " was adopted by the eighth general assembly of the state of Colorado in the year 1891. While the act in its main features follows the Australian ballot system in force elsewhere, some new provisions are inserted, while others are modified in many essential particulars.

Soon after the taking effect of the act, controversies arose with reference to the proper construction to be placed upon certain portions of the statute. The case of *The People v. The District Court*, 18 Colo. 26, was a contest between rival factions of a political party; but in this case the two contending factions are claiming the same emblem, while in the case reported in 18 Colo. different emblems were adopted. In that case it was held, after careful consideration, that the controversy presented was not one contemplated by the legislature at the time of the passage of the act, and, therefore, not provided for; that under the law as it then existed, neither the secretary of state nor the courts were empowered to determine as between two contending factions of a political party, which, if either, was entitled to represent such party. In passing upon that case the court plainly intimated that additional legislation was necessary, in order that the full benefit of ballot reform might be secured. This is apparent from the following extracts, taken from the opinion :

" Here we have to deal with two conventions, each claiming the right to represent the same political party. The act itself will be searched in vain for any provision for such a contingency. It was not contemplated by the legislature, and therefore not provided for. It should not be a matter of surprise that the act as originally passed is not perfect in all particulars. The beneficent laws of the world have grown with time, as the result of experiment and amendment. * * *

" Our conclusion is, that under the circumstances disclosed by this record, neither the secretary of state nor the courts are called upon to decide which of the two rival conventions was entitled to act for the democratic party of Colorado.

Until some statute clothes some tribunal with such power, the matter should, in our judgment, be left for adjustment elsewhere."

The statute prohibits the use of the same emblem for two sets of nominations. The importance of a strict enforcement of this provision arises from another provision of the act, to the effect that the voter may vote for a whole set of nominations by placing a cross upon the official ballot opposite the emblem of the party making such nominations, and depositing the same in the ballot box. A cross opposite an emblem used in common by two parties would necessitate the rejection of the ballot, for the reason that the intent of the voter could not be ascertained. Consequently, where, as here, the emblem is in controversy between two factions, unless some officer, board or tribunal is authorized to settle such dispute, the beneficent provisions of the act would be defeated.

By keeping in mind these facts, we shall be greatly aided in interpreting the amendment of 1894, under which the district court acted in assuming jurisdiction of the present controversy. This amendment reads as follows:

" Whenever any controversy shall arise between any official charged with any duty or function under this act, and any candidate, or the officers or representatives of any political party, or persons who have made nominations, upon the filing of a petition by any such official or persons, setting forth in concise form the nature of such controversy and the relief sought, which petition shall be under oath, it shall be the duty of such court, or the judge thereof in vacation, to issue an order commanding the respondent in such petition to be and appear before the court or judge, and answer under oath to such petition; and it shall be the duty of the court or judge to summarily hear and dispose of any such issues, with a view of obtaining a substantial compliance with the provisions of this act by the parties to such controversy, and to make and enter orders and judgments, and issue the writ or process of such court to enforce all such orders and judgments. The provisions of this act shall be liberally construed,

so as to carry out the intent of this act, and of political parties, nominees and others in proceedings under this act."

The contention of petitioners is that this act was not intended to clothe any tribunal, such as the district court, with power to hear and decide which of two rival conventions was entitled to act for a given political party. The argument in support of this contention is based upon the letter of the amendment. It is urged that the controversy here is not one that the secretary of state is given power to determine, for the reason that it is not a controversy between any official charged with any duty or function, and any candidate, etc., and, therefore, not embraced within the amendment.

The secretary, in this case, has assumed jurisdiction, and has, in fact, decided the controversy; and being about to carry into effect his judgment by excluding one ticket from the official ballot, and by awarding the "cottage home" emblem to the ticket nominated at Denver, the claim now advanced by his counsel to defeat the jurisdiction of the district court, upon the ground that the action of the secretary of state was had upon a matter over which he had no jurisdiction, cannot be allowed to prevail. *Skinner v. Beshoar*, 2 Colo. 383–387.

The defeated party applied to the district court for relief, challenging the authority of the secretary to decide the controversy; and, also, contesting his decision upon the merits. We are unanimously of the opinion that this constituted such a controversy as is embraced within the amendment of 1894, and over which the district court is given jurisdiction by the express letter of the statute.

Moreover, the statute, being remedial in character, it must be liberally construed, in order that the intent may be given effect. The intent of the legislature, expressed in the amendment, in giving the district court jurisdiction, was for the purpose of enforcing by the courts a "substantial compliance with the provisions of this act by the parties to such controversy." It is manifest that the construction now con-

tended for by relator would defeat the very purpose of the act, if adopted.

Upon the record presented, our conclusion is that the district court had jurisdiction to entertain the cause and determine the controversy. The writ of prohibition must, therefore, be denied, and the proceeding dismissed.

*Denied.*