**The People of the State of Colorado v. Richard T. McKenna**
No. 79SA209
**The People of the State of Colorado v. Robert Lee Newell**

(611 P.2d 574)

Decided May 5, 1980.                    Rehearing denied June 16, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, David K. Rees, Assistant Attorney General, Nolan L. Brown, District Attorney, Paul Cohen, Deputy, for plaintiff-appellee in 79SA165.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, David K. Rees, Assistant Attorney General, for plaintiff-appellee in 79SA209.

J. Gregory Walta, State Public Defender, Norman R. Mueller, Deputy, Shelley I. Gilman, Deputy, for defendant-appellant in 79SA165 and 79SA209.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

The defendants in *People v. Newell* and *People v. McKenna,* consolidated for purposes of appeal, seek re-sentencing under a version of House Bill 1589, Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867, legislation fixing determinate sentences for classes of crimes. The General Assembly in special session postponed the effective date of the bill. The defendants allege that the Governor's call for the special session violated the constitutional separation of powers doctrine and that the impropriety of the call invalidated the legislation enacted at the special session. We uphold the legislative action postponing the effective date of H.B. 1589 and affirm the sentences in both cases.

Robert Lee Newell, the defendant in 79SA209, challenges the propriety under section 18-1-409, C.R.S. 1973 (now in 1978 Repl. Vol. 8), of his sentences for first-degree burglary and accessory to a crime of first-degree murder. Newell pled guilty to both counts and was sentenced to an indeterminate term not to exceed ten years for accessory to a crime and to a term of not less than ten years nor more than twenty years at the

penitentiary for first-degree burglary. Concurrent sentences were entered on June 5, 1978, and the court gave Newell pre-sentence confinement credit for 1,293 days at the Colorado State Hospital.

A jury found Richard T. McKenna, the defendant in 79SA165, guilty of first-degree sexual assault. The trial court sentenced him to a term of fifteen to twenty-five years at the penitentiary. The defendant's conviction was affirmed on October 10, 1978, in *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). The trial court subsequently denied the defendant's Crim. P. 35(b) motion for post-conviction review of his sentence, and he brought this appeal.

### I.

The defendants in both cases contend that they should have been re-sentenced under the 1977 version of House Bill 1589. Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 861. H.B. 1589 applied to persons sentenced after July 1, 1978, and to all cases which had not become final 120 days prior to that date. *See* section 18-1-410(1)(f), C.R.S. 1973 (now in 1978 Repl. Vol. 8); Crim. P. 35(a); *People v. Smith,* 189 Colo. 50, 536 P.2d 820 (1975). If the effective date of H.B. 1589 had not been postponed, the defendants could have elected determinate sentences. Newell's sentence for first-degree burglary, a class three felony, was ten to twenty years, and under H.B. 1589, the presumptive sentence for a class three felony would have been four and one-half years. Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867. His sentence for accessory to first-degree murder, a class four felony, was indeterminate to ten years, and under H.B. 1589, the presumptive sentence for a class four felony would have been two years. Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867. McKenna's sentence for first-degree sexual assault, a class two felony, was fifteen to twenty-five years, and under H.B. 1589, the presumptive sentence for a class two felony would have been seven and one-half years. Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867.

Governor Lamm vetoed H.B. 1589 because of concern that it would dramatically shorten existing sentences. We declared his veto void because he failed to file it with the Secretary of State within thirty days as required by the Colorado Constitution. *In Re: Interrogatories of the Governor,* 195 Colo. 198, 578 P.2d 200 (1978). After our decision on April 10, 1978, but before the July 1, 1978 effective date of H.B. 1589, the Governor called a special session of the General Assembly under Article IV, Section 9 of the Colorado Constitution:

"The governor may, on extraordinary occasions convene the general assembly, by proclamation, stating therein the purpose for which it is to assembly; but at such special session no business shall be transacted other than that specially named in the proclamation."

The Governor's proclamation stated that the purpose of the special session was

"Solely for the business of changing the effective date of House Bill 1589, Chapter 216, Session Laws of 1977, by amending Section 79 thereof."
Colo. Sess. Laws 1978 (First Extraordinary Session), Executive Order at 1.
At the special session, the General Assembly postponed the effective date of H.B. 1589 from July 1, 1978, until April 1, 1979. Colo. Sess. Laws 1978 (First Extraordinary Session), section 1 at 2. The defendants contend that the call impermissibly narrowed the General Assembly's action and usurped legislative power.

■ Challenges to legislation on the basis that the bill passed by the General Assembly exceeded the limits of the Governor's call for a special session have been successful on two grounds: (1) that the Governor's call was too broad, *e.g., Denver and R.G.R. Co. v. Moss,* 50 Colo. 282, 115 P. 696 (1911); or (2) that the Governor's call was too specific, *People ex rel. McGaffey v. District Court,* 23 Colo. 150, 46 P. 681 (1896); *In re Governor's Proclamation,* 19 Colo. 333, 35 P. 530 (1894).

In *Denver and R.G.R. Co. v. Moss, supra,* the only case in which a statute enacted in special session was stricken, the Governor's proclamation read:
"'To enact any and all legislation relating to or in any wise affecting corporations, both foreign and domestic, of a *quasi*-public nature.'"
*Denver and R.G.R. Co. v. Moss,* 50 Colo. at 284, 115 P. at 696.
The legislature, acting under the call, adopted a statute providing absolute liability against railroads for the killing of livestock. Referring to the call as "too broad," the court described *Colo. Const.* Art. IV, Sec. 9 as contemplating
"that there shall first exist in the executive's mind a definite conception of a public emergency, which demands an extraordinary session . . . ."
*Denver and R.G.R. Co. v. Moss,* 50 Colo. at 286, 115 P. at 697.

On the other hand, in *People ex rel. McGaffey, supra,* and *In re Governor's Proclamation, supra,* the Governor's call was too specific, and the legislature was limited only to the general subject of the call. An attempt by the Governor to tell the General Assembly how to modify the subject by suggesting specific amendments was considered advisory only, and legislation that did not conform with the Governor's specific suggestions was upheld.

Here, the General Assembly adopted a statute within the contours of the Governor's call. Thus, we only consider whether the call limited the legislature's choice in a way that interfered with *Colo. Const.* Art. III, which provides:
"The powers of the government of this state are divided into three distinct departments — the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly

belonging to either of the others, except as in this constitution expressly directed or permitted."

*Colo. Const.* Art. IV, Sec. 9, allowing for the Governor's call for a special session is one of the exceptions.

■ Here also, the Governor had a definite conception of a public emergency demanding an extraordinary session. In 1977, the legislature adopted H.B. 1589 after brief consideration. the Governor's concern was that the bill be subject to careful legislative review before it was put into effect. Such consideration would be possible at the next regular session of the General Assembly if the legislature postponed H.B. 1589's effective date. The Governor's call did not tell the legislature how to modify the general subject matter his call conveyed. The General Assembly could retain the July 1, 1978 effective date or it could change the date to any one of a number of possibilities. The legislature elected to postpone the effective date of the bill until April 1, 1979, allowing time for review. In this situation we cannot say that the Governor exercised power belonging to the legislature. The effective date of H.B. 1589 was validly postponed.

## II.

■ In March, 1979, the General Assembly amended H.B. 1589 to make the sentencing provisions prospective only:

Section 25:

"This act shall take effect July 1, 1979, shall apply to offenses committed on or after said date, and, notwithstanding any other provision of law or court rule, shall not apply to offenses committed prior to said date."

Colo. Sess. Laws 1979, ch. 157 at 672.

Defendant Newell argues that section 25 of H.B. 1589 is an unconstitutional infringement by the legislature on this court's rule-making power. He bases his argument on Crim. P. 35(b)(1)(VI), allowing post-conviction remedy of a sentence if

"there has been significant change in the law subsequent to July 1, 1972, applied to applicant's conviction or sentence, requiring in the interests of justice retroactive application of the changed legal standard . . . ."

We disagree that section 25 of H.B. 1589 usurps the rule-making power of this court.

The Supreme Court's rule-making authority is described in *Colo. Const.* Art. VI, Sec. 21:

"The supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases . . . ."

The Constitution grants to the Supreme Court the power to promulgate rules governing court procedure, but the question remains whether a particular rule or statute is procedural or substantive. *People v. McKenna, supra; People v. Smith, supra.* If the legislative act is based in public policy rather than an attempt "to regulate the day-to-day procedural

operation of the courts," it is not a usurpation of the court's prerogatives. *People v. McKenna,* 196 Colo. at 372, 585 P.2d at 278.

We find that H.B. 1589 modifies the length of criminal sentences, a matter of substantive law, and is a public policy determination appropriate for the legislature. The legislature may limit the retroactive application of the presumptive sentencing in H.B. 1589 without usurping the rule-making authority of this court.

## III.

Finally, defendant Newell alleges that the sentences he received were excessive, primarily because the probation department recommended probation.

Pursuant to a plea bargain, Newell pled guilty to first-degree burglary and to being an accessory to first-degree murder. He originally was charged with first-degree murder, attempted burglary, and conspiracy. The charges arose from an effort by the defendant and two friends to burglarize the apartment of a narcotics dealer. The defendant obtained a gun which he gave to one of the friends to take to the door of the apartment. The friend went to the wrong door and subsequently shot and killed a neighbor of the dealer.

The defendant originally was found incompetent to stand trial and spent 1,293 days in the Colorado State Hospital. His subsequent sentence for pleading guilty to first-degree burglary was ten to twenty years, and he was given credit for the time spent in the State Hospital. First-degree burglary is a class three felony, and the maximum punishment at the time the defendant was sentenced was forty years imprisonment. Section 18-1-105, C.R.S. 1973 (now in 1978 Repl. Vol. 8). The defendant's sentence, with credit for the time spent in the State Hospital, was less than half the maximum possible.

The defendant Newell had severe mental and emotional problems. Prior to this case, his contact with the criminal justice system was minimal. The probation department concluded that the punishment and rehabilitation of Newell were served by his stay at the State Hospital. On the other hand, because the defendant could have been convicted of first-degree murder under a felony-murder theory, the prosecution asked the judge to impose the maximum sentence as punishment for the defendant and protection for society.

In sentencing, the trial court considers the interest of both society and the defendant. The trial court has great leeway in imposing sentence, and absent a clear abuse of discretion, the trial court's decision will not be modified on appeal. *Triggs v. People,* 197 Colo. 229, 591 P.2d 1024 (1979); *People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975). We find that the trial court in sentencing Newell to ten to twenty years for first-degree burglary did not abuse its discretion.

458

We affirm the judgments in *People v. Newell* and *People v. McKenna*.