360 So.2d 371 (1978)
PINELLAS COUNTY PLANNING COUNCIL, Appellant,
v.
Derwin B. SMITH, II, Etc., et al., Appellees.
No. 50730.
Supreme Court of Florida.
February 2, 1978.
Rehearing Denied May 25, 1978.
Scott L. Knox, Asst. County Atty., Clearwater, for appellant.
John T. Allen, Jr., St. Petersburg, and Chester B. McMullen, Jr., Clearwater, for appellees.
Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for Senator Henry B. Sayler as amicus curiae.
HATCHETT, Justice.
In this case, we are called upon to determine whether Chapter 73-594, Laws of Florida, which established the Pinellas County Planning Council and authorized it to prepare a comprehensive countywide land use plan, violates Article III, Section 11(a)(1), Florida Constitution, in that it affects the jurisdiction or duties of a class of officers. We decide this question in the negative.
On January 15, 1974, the Board of County Commissioners of Pinellas County adopted a comprehensive land use plan promulgated by the Pinellas County Planning *372 Council pursuant to Chapter 73-594, Laws of Florida. The plan designated the property owned by appellees as an open space recreation area and prohibited any residential, commercial or industrial use of the land. Appellees brought an action seeking to declare this special act violative of Article III, Section 11(a)(1) of the Florida Constitution in that it affects the powers, prerogatives, rights, responsibilities, and obligations of the duly elected Board of County Commissioners. The circuit court ruled in favor of the plaintiffs and found Chapter 73-594, as amended by Chapter 74-584, unconstitutional.[1] We have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
Recognizing the necessity for the "orderly growth, development, and environmental protection of Pinellas County" the Legislature passed Chapter 73-594, which established the Pinellas County Planning Council. At the time Chapter 73-594 was passed, the 24 municipalities in Pinellas County each had power to prepare separate *373 land use plans under Chapter 166, Florida Statutes (1975), and the board of county commissioners had the power to prepare a plan for all unincorporated areas of the county. Section 125.01(1)(g), Florida Statutes (1975). No body existed, however, with authority to develop a comprehensive countywide plan or to coordinate the existing plans of the several municipalities and the board. The Legislature attempted to remedy this problem by establishing the Pinellas County Planning Council.
Appellees contend that Chapter 73-594 is violative of Article III, Section 11(a)(1), Florida Constitution which provides:
SECTION 11. Prohibited Special Laws. 
(a) There shall be no special law or general law of local application pertaining to:
(1) election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies. (emphasis added)
It is their contention that the act is unconstitutional because it usurps powers and duties previously exercised by the Board of County Commissioners, i.e., countywide land use planning. We do not agree.
While Article III, Section 11(a)(1) provides that there shall be no special law of local application pertaining to the jurisdiction or duty of a class of officers, this court has interpreted that section to mean that where the primary or main purpose of a special act is a valid county purpose, and where the effect of the act upon the jurisdiction or duties of county officers is incidental to that main purpose, the act is not in violation of the constitutional provision. Brandon Planning and Zoning Authority v. Burns, 304 So.2d 121 (Fla. 1974). In Kirkland v. Phillips, 106 So.2d 909 (Fla. 1958), we upheld a special act creating the Port Authority for Liberty County in the face of an attack that the act unconstitutionally affected the jurisdiction and duties of the Board of County Commissioners. We held that although the act required the board to perform duties which theretofore were not required, the additional duties were merely incidental to the main purpose of the act. Recognizing our historical judicial approval of county agencies created to deal with countywide problems or functions, we stated:
[O]ur statute books are full of authorizing legislation establishing similar authorities for many Florida counties. There are taxing districts, hospital districts, drainage districts and many other similar districts or such agencies of county government that have been created by local acts of the Legislature. The cases sustain the notion that these agencies serve a useful and valid county function. In many instances they have contributed immeasurably to the growth and development of the counties which they serve. We have no difficulty, therefore, in reaching the conclusion that the functions authorized to be performed by the Port Authority for Liberty County were valid and proper county functions. Having arrived at this point, it is perfectly clear that the duties imposed upon the county commissioners by the 1955 act were merely incidental to the main purposes of the act and being such the act will not be considered as violative of Article III, Section 20, of the Florida Constitution.[2] (at 912)
In Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65 (Fla. 1962) the court considered a special act creating the Hillsborough Aviation Authority which was given
"... exclusive jurisdiction, control, supervision and management over all airports in the County, whether owned by municipalities in said county or the county, except airports owned, controlled and operated by private persons. The Authority shall have the power to let or lease any airport or portion of the same, *374 including the buildings and hangars thereon, and to grant concessions upon such terms and conditions as it shall deem proper." Chapter 23339, Section 4, Laws of Florida (1945).
Under prior general legislation and under the general "Airport Law of 1945" the municipalities and boards of county commissioners throughout the state had the power to regulate and operate airports within their jurisdiction. Chapter 149, Florida Statutes (1941), (1945). The special act creating the authority contained the following stated purposes:
It is not the purpose and intent of this Act to divest the title of any municipally owned or County owned airports situated in the County, but it is the intent and purpose of this Act to confer authority and jurisdiction over all such airports so as to coordinate the proper functions and operations of the same, for the best interests of said County and City. Chapter 23339, Section 7, Laws of Florida (1945). (emphasis supplied)
The Wilson Court upheld the special act, determining that it had a valid county purpose:
We have heretofore upheld local acts establishing various special improvements districts and county development authorities such as the County Airport Authority here involved. In those instances where we have approved such legislation, we did so on the basis that the county agency served an important and valid public purpose. When an analysis of a statute reveals that an appropriate county purpose will be served by the agency created, we have consistently extended to the legislation our judicial approval.
* * * * * *
Having determined the validity of the broad public purpose served by the appellee Authority, it is only necessary to apply the established rule that the incidental involvement of the duties of other county officers would not do violence to that provision of Section 20, Article III, Florida Constitution, which prohibits local laws "regulating the jurisdiction and duties of any class of officers." Wilson v. Hillsborough Aviation Authority, at 67.
Only when the purpose of a special act is to usurp the rights or powers conferred by general law is the statute unconstitutional. In those cases where a special act has been held unconstitutional it has provided for the complete transfer of power from a state officer to a newly created or designated person or agency. One such case was Brandon Planning and Zoning Authority v. Burns, wherein we stated:
"The basic purposes of the act, sub judice, is to remove from the Board of County Commissioners their zoing (sic) jurisdiction in the `Brandon area' and to place this jurisdiction in the Brandon Planning and Zoning Authority, to give this authority power to enact county ordinances and then obligate the County Commissioners other county officers, boards and departments to comply with and enforce such ordinances. (at 123)
In this case we do not find a transfer of jurisdiction, nor do we find that the Pinellas County Planning Council will "enact ordinances and ... obligate the County Commissioners, other county officers, boards and departments, to comply with and enforce such ordinances." The Board of County Commissioners never had the power to adopt a "countywide" land use plan. Article VIII, Section 1(f), Florida Constitution, Chapter 166, Florida Statutes (1973), Section 125.01, Florida Statutes (1973). Furthermore, the planning council, though authorized to develop a countywide plan, is not authorized to implement the plan or initiate changes to it. Any proposed plan of the council must be approved by the Board of County Commissioners.[3] *375 Any modification must be initiated by a local governing unit.[4] The planning council has authority to reject proposed changes or modifications, but only where such changes or modifications would have an "adverse" effect countywide.[5] Finally, no provision of Chapter 73-594 compels the board to approve any plan offered by the council. The discretion left to the commission precludes usurpation. Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771 (1928).
For the reasons stated above, we find that Chapter 73-594, Laws of Florida, was designed to serve a valid county purpose and only incidentally affects the jurisdiction and duties of the Board of County Commissioners. Chapter 73-594 is therefore constitutional.
Accordingly, the order of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND and SUNDBERG, JJ., concur.
NOTES
[1] The land use plan affecting appellee's land was adopted January 15, 1974 under Chapter 73-594, prior to the 1974 amendment. Although the trial judge considered the constitutionality of Chapter 73-594 as amended by Chapter 74-584, it is our view that the rights of the parties may be determined by a consideration of Chapter 73-594 alone.

We note that the effective date of Chapter 73-594, Laws of Florida, as stated in Section 15, was August 1, 1974. However, reference to the year "1974" was clerical error, corrected by the Legislature in Chapter 76-473, Laws of Florida, which reads in pertinent part as follows:
WHEREAS, the Florida Legislature, in its 1973 Session, enacted chapter 73-594, Laws of Florida, creating the Pinellas County Planning Council; and,
WHEREAS, due to a clerical or scrivener's error, the effective date published in said Act was August 1, 1974, instead of August 1, 1973, as intended by the Legislature; and,
WHEREAS, the Legislature now wishes to correct this error in the effective date in order to conform it to the legislative intent, NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. Section 15 of chapter 73-594, Laws of Florida, as amended by chapter 74-584, Laws of Florida, is amended to read:
Section 15. Effective date.  This act shall take effect August 1, 1974. 1973.
Section 2. All actions heretofore taken by Pinellas County Planning Council pursuant to the provisions of chapter 73-594, Laws of Florida, as amended by chapter 74-584, Laws of Florida, between the dates of August 1, 1973 and August 1, 1974, are hereby approved, ratified and confirmed.
In Section 2, the Legislature specifically ratified all action taken by the Pinellas County Planning Council between August 1, 1973 and August 1, 1974. It was during this time span that the adoption of the Pinellas County Comprehensive Land Use Plan was accomplished, following the procedures set forth in Chapter 73-594.
The error relating to the effective date is apparent on the face of the legislation. While Section 15 states that the act shall take effect August 1, 1974, Section 7(2) specifically provides:
[N]otwithstanding the usual time for filing budgets for the fiscal year 1973-74, moneys provided under the provisions of this section shall be made available for the entire fiscal year 1973-74 and the months remaining upon the effective date of this act in the fiscal year 1972-73. (emphasis added)
The act adopted the fiscal year of the board of county commissioners as the fiscal year of the council. The county's fiscal year for 1972-1973 ended on September 30, 1973. In referring to "the months remaining upon the effective date of this act in the fiscal year 1972-73," the Legislature must have had in mind the months of August and September, 1973. The clear legislative intent then, as expressed in the body of the act, was that the act would be effective, and the council funded during the months of August and September of 1973. It necessarily follows that the reference to August 1, 1974, in Section 15 was clerical error.
When an act states a time in the future when it shall take effect and be in force, it has effect only from that date. The rule applies, however, only where a contrary intent is not manifest in the act itself. Where a contrary intention is expressly stated, a statute should take effect in accordance with the purpose and intent of the body which enacts it. In City of Opa-Locka v. Trustees of Plumbing Industry Promotion Fund, 193 So.2d 29 (Fla.3d DCA 1966), it was stated:
Where, as here, the text of the act reflects the clear legislative intent, then this intent may be effectuated by supplying the words inadvertently omitted and correcting clerical errors. (footnotes omitted) (at 31)
See also, Armstrong v. City of Edgewater, 157 So.2d 422 (Fla. 1963); Beebe v. Richardson, 156 Fla. 559, 23 So.2d 718 (1945) and Haworth v. Chapman, 152 So. 663 (Fla. 1934). [The Attorney General reached the same conclusion in an opinion rendered shortly after the passage of Chapter 73-594 in 1973. See AGO 73-250.]
[2] Art. III, Sec. 20, Florida Constitution of 1885, is the equivalent of Art. III, Sec. 11(a)(1), in our present Constitution. That provision prohibited the Legislature from passing any special or local law "regulating the jurisdiction and duties of any class of officers... .
[3] Chapter 73-594, Laws of Florida, Sec. 5(8) provides:

To adopt plans, codes and regulations for the provision of countywide water, sewerage and solid waste disposal systems. Said plans, codes and regulations shall become effective countywide only upon ratification by the board of county commissioners and by three-fourths (3/4) of the governing bodies of the municipalities in the county. Upon such ratification, the same shall supersede all similar existing plans, codes or regulations then in effect anywhere in the county. Each such governmental body shall ratify or reject any such proposed plan, code or regulation within ninety (90) days after receipt of same.
Chapter 73-594, Laws of Florida, Sec. 9(8) provides:
After the final adoption by the council of any plan, code or regulation, said document shall be filed with each local unit of government in Pinellas County, with the Tampa Bay Regional Planning Council, and with the division of state planning. Once adopted and ratified as provided in section 5(8) and filed and recorded in the office of said clerk of the circuit court, such document shall have all the force and effect of a law, and shall be enforced as provided by law or by extraordinary remedy or injunction. Any comparable plan, code or regulation effective in any unit of local government shall stand repealed.
[4] Chapter 73-594, Laws of Florida, Sec. 10 provides:

Proposed changes by units of local government to a plan, code or regulation filed and recorded; procedure; etc. 
(1) Whenever a plan, code or regulation adopted by the council is filed and recorded with the clerk of the circuit court of Pinellas County, any unit of local government which proposes a change to said plan, code or regulation shall file such proposed change with the council.
[5] Chapter 73-594, Laws of Florida, Sec. 10(2) provides:

The council shall have forty-five days in which to determine whether or not such proposed change by a unit of local government would adversely affect a plan, code or regulation filed and recorded with the clerk of the circuit court in Pinellas County. If the council determines that such a proposal by a unit of local government would adversely affect any plan, code or regulation filed and recorded with said clerk, the council shall detail in writing to such unit of local government the reasons therefor. If the council fails to report to a unit of local government within the time specified, the unit of local government which submitted the proposed change may implement same within its jurisdiction.