Roger C. TACORANTE, Petitioner-Appellant,

v.

The PEOPLE of the State of Colorado, Respondent-Appellee.

No. 80SC107.

Supreme Court of Colorado, En Banc.

March 2, 1981.
Rehearing Denied March 23, 1981.

---

3. There was some evidence that the victim also suffered from diabetes and arteriosclerosis.

Davidovich & Welton, Charles Welton, Denver, for petitioner-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Denver, for respondent-appellee.

DUBOFSKY, Justice.

The appellant, Roger C. Tacorante, challenges [1] his conviction for aggravated robbery [2] because the trial court refused to instruct the jury on the affirmative defense of involuntary intoxication and the lesser included offense of simple robbery. [3] He also challenges the sentence entered under the indeterminate sentencing statute, [4] contending that he should have been sentenced under the first version of House Bill 1589, [5] the determinate sentencing law. We affirm the appellant's conviction and sentence.

About 6:30 p. m. on December 23, 1977, the owner of a liquor store at 1400 South Broadway in Denver was confronted in his store by the appellant, who cocked a semi-automatic pistol and pointed it at him. The appellant directed the owner to stand next to his assistant at the cash register and put the money from the register in a paper bag.

Both the owner and the assistant testified at trial that they feared death or bodily injury during the course of the robbery.

When a customer entered the store, the appellant pointed the gun at him and told him to put his wallet on the counter. The appellant then ordered the three victims into the back room of the liquor store. The owner took a pistol from his desk, returned to the front room, and shot the appellant once in the back as he left the store. The police found the appellant lying on the sidewalk with a loaded gun and money nearby.

At trial, a defense witness testified that the appellant had injected three bags of heroin about an hour before the robbery. A psychiatrist called by the defense testified that the appellant had been addicted to heroin for approximately ten years and that addiction substantially diminished a person's ability to refrain from using heroin. The appellant subsequently requested the trial court to instruct the jury on his defense that involuntary heroin intoxication, caused by his addiction, had prevented him from forming the requisite intent to commit aggravated robbery. The appellant also requested an instruction on simple robbery.

The jury convicted the appellant of aggravated robbery. At sentencing on May 4, 1979, the defense argued that the maximum sentence the court could impose for a class three felony was four and one-half years because the first version of House Bill 1589 had become effective on April 1, 1979. [6] The court, however, applied the indeterminate sentencing statutes, which prescribed a sentencing range of from five to forty years imprisonment for a class 3 felony, [7] and sen-

---

1. This case was transferred to this court from the court of appeals in accordance with C.A.R. 50.

2. Section 18–4–302, C.R.S.1973 (1978 Repl.Vol. 8).

3. Section 18–4–301, C.R.S.1973 (1978 Repl.Vol. 8).

4. Section 16–11–304, C.R.S.1973 (1978 Repl. Vol. 8).

5. Colo.Sess.Laws 1977, ch. 216.

6. Colo.Sess.Laws 1978, ch. 1, 1st Extraordinary Session.

7. See section 16–11–304, C.R.S.1973 (1978 Repl.Vol. 8); section 18–1–105(1), C.R.S.1973 (1978 Repl.Vol. 8).

tenced the appellant to a minimum of sixteen years and a maximum of sixteen years and one month in the state penitentiary, with credit for 489 days of pre-sentence confinement.

Because the consumption of heroin by an addict causes self-induced, not involuntary, intoxication and because there was no other evidence of involuntary intoxication, the trial court correctly refused to give the tendered intoxication instructions. The trial court also correctly refused to instruct the jury on the lesser included offense of simple robbery; no evidentiary basis existed for a verdict of simple robbery.

Finally, the trial court correctly sentenced the appellant on May 4, 1979, under the indeterminate sentencing statutes. The April 1, 1979, effective date of the first determinate sentencing bill was postponed when the Governor signed the second H.B. 1589,[8] a revised version of the original determinate sentencing bill, on March 29, 1979. Because this second bill did not become effective until July 1, 1979, the indeterminate sentencing statute remained in effect until that date.

## I.

■ At trial the appellant introduced evidence of heroin intoxication and addiction as bases for an affirmative defense of involuntary intoxication under section 18–1–804, C.R.S.1973 (now in 1978 Repl.Vol. 8).[9] He

argues that he cannot be held criminally responsible for his conduct because his heroin intoxication at the time of the robbery was not self-induced. Section 18–1–804(5) characterizes intoxication as "self-induced" only if a defendant knowingly introduces the intoxicant into his body. The appellant reasons that evidence of his heroin addiction and resulting inability to forego heroin use required submission of the question whether he knowingly induced his intoxication to the jury.

Our review of the record confirms the propriety of the trial court's refusal to give the appellant's requested instruction on involuntary intoxication.[10] The only evidence supporting the defense of involuntary intoxication was testimony, first, that the appellant was a heroin addict under the influence of heroin at the time he committed the robbery and, second, that lengthy heroin addiction results in a greatly diminished capacity to refrain from using heroin. Inability to refrain from drug use does not warrant an involuntary intoxication instruction without further evidence that the intoxication was involuntary and that it impaired the defendant's capacity to abstain from the conduct proscribed by the substantive criminal statute under which he has been charged.

■ Mere addiction is not sufficient to render the injection of heroin involuntary or unknowing. Fingarette, *Addiction and*

---

8. Colo.Sess.Laws 1979, ch. 157.

9. Section 18–1–804 provides:

"(3) A person is not criminally responsible for his conduct if, by reason of intoxication *that is not self-induced* at the time he acts, he lacks capacity to conform his conduct to the requirements of the law.

(4) 'Intoxication' as used in this section means the disturbance of mental or physical capacities resulting from the introduction of any substance into the body.

(5) 'Self-induced intoxication' means intoxication caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he *knowingly*

*introduced* or allowed to be introduced into his body . . . ."
(Emphasis added.)

10. The trial court did instruct the jury that "voluntary intoxication" is a defense to the specific intent portion of the aggravated robbery statute. One of the methods of committing aggravated robbery under section 18–4–302 is to be "armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person. . . ." Section 18–1–804(1), C.R.S.1973 provides that "evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of specific intent if such intent is an element of the crime charged."

*Criminal Responsibility*, 84 *Yale L.J.* 413 (1975); *Commonwealth v. Sheehan*, 376 Mass. 765, 383 N.E.2d 1115 (1978); *Loveday v. State*, 74 Wis.2d 503, 247 N.W.2d 116 (1976). As the trial judge here observed, carrying the appellant's argument to its logical conclusion results in an absurdity: a person so addicted to intoxicants that he is unable to refrain from their use could never be held responsible for his criminal conduct.

## II.

 The trial court rejected the appellant's tendered instruction on simple robbery,[11] a lesser included offense of aggravated robbery.[12] A simple robbery instruction is mandatory when the evidence would justify acquitting a defendant of aggravated robbery while convicting him of simple robbery. *People v. Lundy*, 188 Colo. 194, 533 P.2d 920 (1975); *People v. Reed*, 180 Colo. 16, 502 P.2d 952 (1972). Here, the owner of the liquor store and his assistant testified that the appellant put them in fear of death or serious bodily injury during the robbery "by the use of . . . intimidation with a deadly weapon." Because "none of the evidence presented showed anything less than aggravated robbery," *People v. Reed, supra*, 180 Colo. at 19, 502 P.2d at 954, we uphold the trial court's refusal to instruct the jury on simple robbery.

## III.

The appellant requested the trial court to sentence him under the first version of H.B.

1589 which established a determinate sentence for class three felonies. The court refused to impose the sentence fixed by the first determinate sentencing bill and instead sentenced the appellant to a minimum of sixteen years and a maximum of sixteen years and one month imprisonment in the state penitentiary. This sentence is within the indeterminate sentencing range prescribed by sections 16–11–304, C.R.S.1973 (1978 Repl.Vol. 8) and 18–1–105(1), C.R.S. 1973 (1978 Repl.Vol. 8). The appellant now seeks to set aside the sentence entered by the trial court and to substitute for it a lesser sentence.

The General Assembly adopted the first version of H.B. 1589 in June, 1977. It was to become effective on July 1, 1978. The Governor vetoed the bill; however, we declared his veto invalid. *In re Interrogatories of the Governor*, 195 Colo. 198, 578 P.2d 200 (1978). Thereafter, the Governor called a special session of the General Assembly to request a delay in the bill's effective date. H.B. 1001 of the First Extraordinary Session of the Fifty-First General Assembly postponed the effective date of H.B. 1589 to April 1, 1979. *See People v. McKenna*, Colo., 611 P.2d 574 (1980).

 At the next regular session of the General Assembly, a second version of H.B. 1589, amending the original determinate sentencing bill, was adopted. Among the amendments enacted by the legislature were section 23, delaying the effective date of the first version of H.B. 1589 to July 1,

---

11. Section 18–4–301(1), C.R.S.1973 (1978 Repl. Vol. 8) provides:

"A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery."

12. Section 18–4–302(1), C.R.S.1973 (1978 Repl. Vol. 8) provides:

"(1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:

(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or

(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury; . . . ." A "deadly weapon" is defined in section 18–1–901(3)(e), C.R.S.1973 (1978 Repl. Vol. 8) as a "firearm" and in section 18–1–901 (3)(h), C.R.S.1973 (1978 Repl.Vol. 8) "firearm" is defined as any "handgun, automatic, revolver, [or] pistol . . . ."

1979,[13] and section 25, providing that the second version of H.B. 1589 would take effect on July 1, 1979 and be solely prospective in effect.[14]

Sections 23 and 25 read as follows:

"Section 23. Section 79 of chapter 216, Session Laws of Colorado 1977, as amended by section 1 of chapter 1, Session Laws of Colorado 1978, First Extraordinary Session, is amended to read:

Section 79. *Effective date.* This act shall take effect ~~April 1, 1979~~ JULY 1, 1979.

\*　\*　\*　\*　\*　\*

Section· 25. *Effective date —applicability.* This act shall take effect July 1, 1979, shall apply to offenses committed on or after said date, and, notwithstanding any other provision of law or court rule, shall not apply to offenses committed prior to said date."

■ The appellant here argues that under section 25 of the act, the effective date of the second version of H.B. 1589 was July 1, 1979. He asks us to rule that because July 1, 1979, is the effective date of the entire act, the provision of section 23 which postponed the effective date of the first version of the bill was not itself effective until July 1, 1979. If the postponement was not effective until July 1, 1979, then by its terms, the first determinate sentencing bill took effect on April 1, 1979, and remained in effect until July 1, 1979. Because the

defendant was sentenced on May 4, 1979, he argues that he is therefore entitled to receive a determinate maximum sentence under the first bill. We disagree.

■ The Governor signed the second determinate sentencing bill into law on March 29, 1979. Article IV, Section 11 of the Colorado Constitution provides that a bill becomes a law upon signature by the Governor:

"Every bill passed by the general assembly shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law . . . ." [15]

The Colorado Constitution, Article V, Section 19, provides that:

"An act of the general assembly shall take effect on the date stated in the act, or, if no date is stated in the act, then on its passage . . . . ." [16]

Read together, Article IV, Section 11 and Article V, Section 19 permit an act to become effective either on the date stated in the act or upon the Governor's signature. Because the effective date stated in an act and the date a bill becomes a law are not necessarily identical, nothing in the Constitution prevents different portions of the same act from taking effect on different dates.

It is "important not to confuse the date on which the bill 'becomes a law' with the date on which that law becomes effective;

---

**13.** The effective date of a statute may be postponed by legislative action after the original passage of the statute but before the statute goes into effect. *See United States v. Will,* —— U.S. ——, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *Cochise County v. Dandoy,* 116 Ariz. 53, 567 P.2d 1182 (1977).

**14.** The first version of H.B. 1589 did not provide that it was to be prospective only. Among other changes, the second version amended the first version to give it exclusively prospective effect. Section 18–1–410(1)(f), C.R.S.1973 (1978 Repl.Vol. 8) and Crim.P. 35(b)(1)(VI) permit a defendant to file a post-trial motion in district court within 120 days after his conviction has become final alleging "a significant

change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." *See People v. McKenna, supra; People v. Thomas,* 185 Colo. 395, 525 P.2d 1136 (1974).

**15.** *See People v. Glenn,* Colo., 615 P.2d 700 (1980).

**16.** When approval by the executive is necessary, his signature is the last act, and the date of passage is the date of his approval. 2 *Sutherland, Statutory Construction* § 33.06 (4th ed. C. Sands 1973).

the two need not coincide." *City of Springfield v. Allphin*, 74 Ill.2d 117, 23 Ill.Dec. 516, 384 N.E.2d 310 (1979); *White v. Barrett*, 45 Ill.2d 206, 258 N.E.2d 334 (1970). Different parts of the same statute may take effect at different times. 2 *Sutherland, Statutory Construction* § 33.08 (4th ed. C. Sands 1973). Different effective dates may be prescribed by express language or by necessary and reasonable implication. *State ex rel. Banks v. Taylor*, 199 Tenn. 507, 287 S.W.2d 83 (1956).

 The general canons of statutory construction may be applied to determine the correct effective date of a statute. *Pinellas County Planning Council v. Smith*, 360 So.2d 371 (Fla.1978). In Colorado, the intent of the law making body must be ascertained and, if possible, given effect. A statute should not be construed in a manner which defeats the obvious legislative intent. *People v. Driver*, 189 Colo. 276, 539 P.2d 1248 (1975). In *Pinellas County, supra*, 360 So.2d at 372, n. 1, the Florida Supreme Court allowed the legislature to correct a mistaken effective date, stating that "a statute should take effect in accordance with the purpose and intent of the body which enacts it." The effective date of August 1, 1974, was changed to August 1, 1973, because the original bill contained a provision pertaining to fiscal year 1972–1973 which was to end on September 30, 1973. The court held that it "follows that the reference to August 1, 1974 was a clerical error" that the legislature could correct. *Id.*

We conclude that the provisions of the second determinate sentencing bill took effect in accordance with the purpose and intent of the General Assembly. The Extraordinary Session of the General Assembly which postponed the effective date of the first determinate sentencing act and the legislature's passage of the second determinate sentencing bill before the April 1, 1979, effective date of the first act clearly evidence a legislative decision that certain provisions of the first determinate sentencing act should not become law.[17] *See People v. McKenna, supra.* Were we to rule that section 23 of the second determinate sentencing bill, which postponed the effective date of the first act from April 1, 1979, to July 1, 1979, did not itself take effect until July 1, 1979, we would frustrate the intent of the legislature. Therefore, we hold that the second version of the determinate sentencing bill, H.B. 1589, has two effective dates: section 23, postponing the effective date of the first act, took effect when the Governor signed the bill into law on March 29, 1979; the remaining provisions of the second bill became effective on July 1, 1979, as provided by its section 25.

Our decision is consistent with those of the Massachusetts Supreme Judicial Court in *Commonwealth v. Yee*, 361 Mass. 533, 281 N.E.2d 248 (1972),[18] and the Illinois Supreme Court in *White v. Barrett, supra*,[19]

---

17. Many of the provisions of the first version of H.B. 1589 were, however, retained by the second version of H.B. 1589.

18. In *Commonwealth v. Yee*, the Massachusetts Supreme Judicial Court considered a claim that a prosecution for possession of heroin was precluded by careless statutory draftsmanship. The defendant was indicted for possession of heroin on November 19, 1971. A new narcotics statute had been enacted on November 11, 1971. It was to take effect on July 1, 1972. However, the new statute did not fix a specific date for repeal of existing statutes punishing possession of narcotics. To avoid a repeal of the existing narcotics laws on November 11, 1971, the court determined that the implicit effective date of repeal was February 9,

1972, ninety days after the new statute became law. It reasoned that the narcotics statute was one subject to a referendum under the Massachusetts Constitution and therefore, could not be repealed until ninety days after its successor was adopted. That result enabled the legislature to enact an emergency law on January 27, 1972, which delayed the repeal date of the existing narcotics statutes until July 1, 1972, eliminating the hiatus which would have left Massachusetts without any narcotics laws between February 9, 1972, and July 1, 1972.

19. In *White v. Barrett*, the Illinois Supreme Court held that a law relating to public library districts which had a stated effective date of January 1, 1969, took effect for purposes of a July 17, 1967, repealer when it was signed into

where, as here, the courts found that fidelity to legislative intent necessitated attribution of different effective dates to different provisions of a statute and that a statute not yet in effect had nevertheless become law for purposes of repeal.

Here, the trial court denied the appellant's request to impose sentence under the first determinate sentencing act and sentenced him to an indeterminate sentence on May 4, 1979.[20] Because we hold that the first determinate sentencing act's effective date was postponed until July 1, 1979, the trial court's sentence under the indeterminate sentencing act was correct.

Judgment affirmed.

law on April 19, 1967, although it was not then in effect as a procedure for disconnection from a library district.

20. The trial judge commented that the sentence was valid under the existing indeterminate sentencing statute and also compatible with the new determinate sentencing law.