In re the MARRIAGE OF Eleanor
ATENCIO, Appellee,

and

Leroy Carmen Atencio, Appellant.

No. 01CA0347.

Colorado Court of Appeals,
Div. II.

March 28, 2002.

Colorado Legal Services, Lynn Magalska, Pueblo, Colorado, for Appellee.

Margaret L. Herdeck, Pueblo, Colorado, for Appellant.

Opinion by Judge PLANK.

In this dissolution proceeding, the main issue is whether imputed income based on voluntary underemployment or actual income should be used to calculate child support where a drug-addicted parent loses employment because of that addiction and obtains less lucrative employment. We conclude that income should not be imputed solely based on the fact that the parent was terminated for drug use. Therefore, we reverse the permanent orders awarding Eleanor Atencio (mother) child support and arrearages and remand for further proceedings on this issue. We affirm that portion of the permanent orders obliging Leroy Carmen Atencio (father) to pay mother maintenance.

At the dissolution of their eighteen-year marriage, the parties were in their late forties and had two teenage children. Mother worked part-time in a low paying job for a hospital and cared for the children, while father was employed by a railroad continuously until 1993. Until that time, father's income, supplemented by mother's more meager earnings, provided a comfortable lifestyle that included home ownership and vacations.

In 1993, father was suspended for violating the company policy prohibiting drug use, and he entered a drug rehabilitation program. The railroad reinstated him, but after anoth-

er suspension and reinstatement, he was finally terminated in 2000 for tampering with his urinalysis. In his last year of employment at the railroad, father's gross income after adjusting for per diem payments was approximately $55,000, or $4583 per month. At the time of permanent orders, father had secured alternative employment earning a monthly gross income of only $2197.

For purposes of child support, the court found that father was voluntarily underemployed and imputed a monthly gross income of $4583 based on his last year of work at the railroad. The court calculated mother's income on the basis of her actual part-time monthly gross income of $1119. Based on these income figures, the court ordered father to pay child support of $976 per month and entered judgment for child support due during the pendency of the proceeding in the amount of $31,720.

The court found that because the marital home was lost to foreclosure, mother was awarded very little marital property that was accessible before retirement. Because she lacked sufficient property and was unable to support herself through appropriate employment, the court awarded her maintenance of $200 per month for two years.

## I.

Father raises three issues concerning child support.

### A.

Father first contends that the trial court erred in finding that he was voluntarily underemployed. He argues that the court failed to consider the totality of the circumstances. He also argues that because he was able to find alternative, albeit less lucrative, employment, and because he has no control over his drug addiction, his underemployment was not "voluntary." We agree that this issue must be reconsidered on remand.

We review child support orders for abuse of discretion because the issue of the parents' financial resources under § 14–10–115, C.R.S.2001, is factual in nature. *In re Marriage of Balanson*, 25 P.3d 28 (Colo. 2001). Abuse of discretion occurs only when the trial court's decision as to child support is manifestly arbitrary, unreasonable, or unfair. *People ex rel. Cerda v. Walker*, 32 P.3d 628 (Colo.App.2001). Thus, we will not disturb the factual findings as to imputation of income unless they are clearly erroneous and not supported by the record. *In re Marriage of Bregar*, 952 P.2d 783 (Colo.App. 1997). However, we review de novo whether the trial court applied the correct legal standard to its findings. *See People v. Haley*, 41 P.3d 666 (Colo.2001).

The trial court is authorized to calculate child support based upon a determination of a parent's potential income if the parent is voluntarily unemployed or underemployed. Section 14–10–115(7)(a),(b)(I), C.R.S.2001; *In re Marriage of Foss*, 30 P.3d 850 (Colo.App.2001). Whether a parent is voluntarily underemployed is typically a question of fact. *In re Marriage of Martin*, 42 P.3d 75 (Colo.App.2002).

What constitutes "voluntary" underemployment has not been specifically addressed in the existing decisional law in this state until today. In an opinion announced simultaneously with ours, another division of this court holds that a person who is involuntarily terminated from employment does not intend or choose to become unemployed, and therefore the person is not, for that reason alone, voluntarily unemployed or underemployed within the meaning of § 14–10–115(7), C.R.S.2001. *People in Interest of J.R.T.*, —— P.3d ——, 2002 WL 464726 (Colo.App. No. 00CA1892, March 28, 2002). We agree with that general interpretation, even under the additional facts involved in this case.

The more specific issue here, whether loss of employment due to addiction and reemployment at a lower wage constitutes voluntary underemployment, has not been addressed by Colorado appellate courts. However, courts in other jurisdictions with similar underemployment statutes have concluded that even though taking drugs was voluntary, the resulting reduction in income after a job loss was not voluntary or deliberate. *See Pace v. Pace*, 135 Idaho 749, 24 P.3d 66 (Ct.App.2001)(no income imputed under "voluntarily underemployed" statute

where addicted mother lost job; mother was not motivated in her abuse of prescription medication by a desire to shed her parental responsibilities); *In re Marriage of Johnson*, 24 Kan.App.2d 631, 950 P.2d 267 (1997)(same result under statute providing for the imputation of income for "deliberate" underemployment, where father was terminated from job after testing positive for drug use; even though the father's use of drugs was voluntary, he did not intend any of the consequences of that voluntary conduct, such as his reduced ability to pay child support).

■ We agree with the reasoning in these cases and hold that when a parent is terminated from employment for drug use, the resulting unemployment or underemployment may not be considered voluntary for purposes of imputing income when calculating child support.

We reach this conclusion fully recognizing that in another context, the supreme court has rejected an attempt to use addiction to avoid responsibilities. *See Tacorante v. People*, 624 P.2d 1324, 1327–28 (Colo.1981)(in construing a statute that provides that a person is not criminally responsible for his or her conduct caused by intoxication that is not self-induced, court held that consumption of heroin by an addict causes self-induced, not involuntary, intoxication, and therefore the inability to refrain from drug use, by itself, did not warrant an involuntary intoxication instruction because "[m]ere addiction is not sufficient to render the injection of heroin involuntary or unknowing," and that "carrying the appellant's argument to its logical conclusion results in an absurdity: a person so addicted to intoxicants that he is unable to refrain from their use could never be held responsible for his criminal conduct"). However, given the different factual and legal bases for that decision, we find it inapplicable here.

■ In holding that termination caused by drug use cannot be considered voluntary for purposes of imputing income, we do not mean to imply that a trial court cannot ultimately impute income in any case of drug use. A person who has been involuntarily terminated from a position for drug use may

subsequently become voluntarily unemployed or underemployed based on actions taken after the termination. *See People in Interest of J.R.T., supra* (failure to attempt in good faith to obtain new employment at a comparable salary or refusal to accept suitable employment offers may support imputation of income); *People in Interest of A.R.D.*, 43 P.3d 632 (Colo.App.2001)(affirming trial court decision that recognized that father's employment opportunities were likely limited as a result of his incarceration, but found that he had not presented any evidence of attempts to find more gainful employment, and therefore found voluntary underemployment and imputed income, at approximately twice the amount of his actual income, based on father's education, licensure, and experience). Thus, failure to treat the addiction could, in the trial court's discretion, be considered in this regard.

■ Here, the trial court applied an incorrect legal standard when it found that father was voluntarily underemployed for the sole reason that he "los[t] his job at the [railroad] due to repeated drug abuse." Accordingly, on remand the trial court shall consider the reasonableness of father's post-termination attempts, if any, to obtain comparable employment and treatment for his addiction.

### B.

Next, father contends that the trial court abused its discretion in ordering child support from February 1998 to November 2000, during the pendency of the proceeding. We disagree with this contention.

■ If, on remand, the trial court again awards mother child support, an award during the pendency of the dissolution proceeding is proper. *See* § 14–10–115(1), C.R.S.2001 (trial court may order child support for the period of time from the separation, filing of the petition, or date of service, whichever is latest, to the date of entry of the support order).

### C.

■ Father's final contention as to child support is that the trial court erred in failing

to impute full-time income to mother, who worked only part-time. We decline to address this contention because father did not raise it before the trial court. *See In re Marriage of Parsons*, 30 P.3d 868 (Colo.App.2001)(issues may not be raised for the first time on appeal where the trial court has not had the opportunity to rule on them).

## II.

Father also contends that the trial court erred in awarding maintenance because the award of $200 per month for two years, when added to his child support obligation, impoverishes him. We perceive no error.

■ An award of maintenance to mother is appropriate if she lacks sufficient property, including marital property awarded to her, to provide for her reasonable needs and is unable to support herself through appropriate employment. *See* § 14–10–114(1), C.R.S. 2001. The phrase "reasonable needs" has been liberally construed, and the determination of reasonable needs is dependent upon the particular facts and circumstances of the marriage. *In re Marriage of Olar*, 747 P.2d 676 (Colo.1987).

■ The eligibility for, amount, and duration of maintenance depend upon a number of statutory factors, only one of which is the ability of the spouse from whom maintenance is sought to meet his or her own needs while meeting those of the spouse seeking maintenance. Section 14–10–114(2), C.R.S.2001; *see In re Marriage of Fernstrum*, 820 P.2d 1149 (Colo.App.1991)(statutory criteria used to determine the amount of a maintenance award set forth in § 14–10–114(2) may also be relevant equitable factors in determining the spouse's eligibility for maintenance). Indeed, the court was required to balance all the relevant factors listed in § 14–10–114(2), including mother's needs and abilities, her future earning capacity, the duration of the marriage and standard of living established throughout, and the parties' financial restrictions. *In re Marriage of Staggs*, 940 P.2d 1109 (Colo.App.1997).

■ Finally, absent an abuse of discretion, a trial court's award of maintenance will not be reversed, and when the order is supported by competent evidence, it should not be disturbed on review. *In re Marriage of Sim*, 939 P.2d 504 (Colo.App.1997).

■ Here, the record supports the conclusion that many of the factors listed in § 14–10–114(2) militate in favor of the $200 per month maintenance award. Mother's inability to meet her needs and her limited earning capacity, coupled with the long duration of the marriage and the standard of living established throughout, all fully support both her eligibility for and the amount of maintenance awarded. In view of the limited assets and incomes of both parties, the trial court's award equitably addressed the parties' financial difficulties. *See People in Interest of V.H.*, 749 P.2d 460, 462 (Colo. App.1987)(no abuse of discretion in awarding $125 per month maintenance where father's financial affidavit revealed a gross monthly income of $1,750 and monthly expenses totalling $1,653, including $200 per month for child support, and where the court found that "[t]here's not enough money in this particular case to go around").

The judgment is affirmed as to maintenance, reversed as to child support and arrearages, and remanded for reconsideration of father's income for purposes of calculating child support.

Judge PIERCE * concurs.

Judge JONES concurs in part and dissents in part.

Judge JONES concurring in part and dissenting in part.

I respectfully dissent from Part I(A) of the majority opinion.

I disagree with the father that he has no control over his drug addiction and that his underemployment was not voluntary.

I am aware of the cases on which the majority relies for the general proposition

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

that, even though a person's use of drugs is voluntary, the consequences of that conduct are not voluntary, even when, as here, the person is aware that the loss of a job is a certain consequence. *See In re Marriage of Johnson*, 24 Kan.App.2d 631, 950 P.2d 267 (1997); *see also Pennington v. Pennington*, 2001 WL 277993 (Tenn.App. No. W2000-00568-COA-R3-CV, March 14, 2001); *Pace v. Pace*, 135 Idaho 749, 24 P.3d 66 (App. 2001). Under these cases, income cannot be imputed for deliberate underemployment.

However, through examination of the supreme court's stance on the voluntariness of addiction, as well as the child support cases involving the analogous situation of reduction in income caused by incarceration, I conclude that income may be imputed under the circumstances of this case.

In *Tacorante v. People*, 624 P.2d 1324 (Colo.1981), the supreme court construed a statute that provides that a person is not criminally responsible for his or her conduct caused by intoxication that is not self-induced. The court held that consumption of heroin by an addict causes self-induced, not involuntary, intoxication, and therefore the inability to refrain from drug use, by itself, did not warrant an involuntary intoxication instruction. The court specifically noted that "[m]ere addiction is not sufficient to render the injection of heroin involuntary or unknowing," and that "carrying the appellant's argument to its logical conclusion results in an absurdity: a person so addicted to intoxicants that he [or she] is unable to refrain from their use could never be held responsible for his [or her] criminal conduct." *Tacorante v. People, supra*, 624 P.2d at 1327-28.

This language sends a clear message that in Colorado, addicts are not absolved of their responsibilities. In contrast, in *In re Marriage of Johnson, supra*, the Kansas appeals court began with the opposite premise that even though the father's use of drugs was voluntary, he did not intend any of the consequences of that voluntary conduct, such as his reduced ability to pay child support. *See also Pace v. Pace, supra* (mother was not motivated in her abuse of prescription medication by a desire to shed her parental responsibilities); *Pennington v. Pennington,*

*supra* (voluntary underemployment must result from an intent on the part of the parent to reduce or terminate his or her income). Thus, the reasoning in these cases is inconsistent with the Colorado supreme court's intolerance for attempting to use addiction to shirk responsibilities.

The two incarceration cases decided in Colorado have been resolved in the same vein, in that an incarcerated parent was given no relief from his child support obligation. *See People in Interest of A.R.D.*, 43 P.3d 632 (Colo.App.2001)(father's employment opportunities were likely limited as a result of his incarceration, but he had not presented any evidence of attempts to find more gainful employment, and therefore court found voluntary underemployment and imputed income, at approximately twice the amount of his actual income, based on father's education, licensure, and experience); *In re Marriage of Hamilton*, 857 P.2d 542 (Colo.App.1993)(modification of child support denied on the basis that father's incarceration was not a substantial and continuing circumstance affecting the support obligation, and incarceration, standing alone, did not justify abatement or modification of father's obligation; trial court erred in finding that father's criminal conviction constituted voluntary underemployment, but only because the scant evidence presented at trial could not sustain that determination, and that error was not grounds for reversal, because the denial of modification was otherwise supported).

In contrast, in *Pace v. Pace, supra*, the failure to impute income to the addicted mother was based, in part, on an incarceration case in the same jurisdiction, which held that a parent should be relieved of the obligation to pay child support during incarceration. *See Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (Ct.App.1988). Thus, inasmuch as the incarceration cases are analogous to the drug cases for purposes of voluntary underemployment, *A.R.D.* and *Hamilton* provide further support for affirming the trial court's imputation of income in this case.

Here, through the father's own voluntary action and intentional conduct, he has divested himself of his ability to earn his previous

income. The record reveals that through his misconduct he had more than sufficient notice of the probable consequences of his voluntary behavior. He is responsible for his reduced financial circumstances, and his duty to provide for the needs of his children should not be abrogated simply because he chose to ingest drugs. *See Abrams v. Connolly,* 781 P.2d 651 (Colo.1989)(a child has a legal right to support from both parents); *People ex rel. Cerda v. Walker, supra* (both parents have a duty to support a child to the best of their abilities). I can discern no reason to offer addicts a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. *See In re Marriage of McCord,* 910 P.2d 85 (Colo.App.1995)(income from job imputed to father who quit job after winning lottery). Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the addicted person has control over his actions and should be held liable for the consequences.

Furthermore, I note that other debts are not forgiven, short of bankruptcy, simply because drug addiction results in an inability to pay them. Thus, from a policy standpoint, I can conceive of no sound reason for relieving an addicted parent of his or her obligation of support, for the sole reason of addiction.

This is not to say that other factors may not be weighed in determining underemployment, such as an obligor's efforts to find alternative employment. Here, however, the father did not present evidence as to his efforts to obtain higher-paying employment. Accordingly, I would hold that the trial court did not err in finding the father voluntarily underemployed and imputing his previous income.

I concur in Part I(B) and (C), and in Part II of the majority opinion. Thus, I would affirm the judgment of the trial court.